IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

v.                    CRIMINAL NO. 02-40 ERIE

JOHN COOLEY


RESENTENCING



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Tuesday, October 18, 2005.



APPEARANCES:
        CHRISTIAN A. TRABOLD, Assistant United States
        Attorney, appearing on behalf of the Government.

        BRUCE G. SANDMEYER, Esquire, appearing on behalf

of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1               P R O C E E D I N G S

2

3               (Whereupon, the Resentencing proceedings began at

4      1:42 p.m., on Tuesday, October 18, 2005, in Courtroom C.)

5

6               THE COURT:  All right, this is the time that we have

7      set for resentencing in the case of United States versus John

8      Cooley.  It's Mr. Sandmeyer, is that right?

9               MR. SANDMEYER:  Yes, your Honor.

10              THE COURT:  Are we going to have any testimony

11     today?

12              MR. SANDMEYER:  Your Honor, there are two character

13     witnesses for Mr. Cooley who would like to make a statement to

14  the court.

15      THE COURT:  All right.  I suppose we'll do that

16  first.  Do you want to call them up then.

17      MR. SANDMEYER:  Yes, your Honor.  Your Honor, the

18  defense would call Gwen Cooley.

19      THE COURT:  All right.  Just come on up to the mike,

20  Ms. Cooley.  Would you state your full name for the record,

21  please?

22      THE WITNESS:  My name is Gwendolyn Cooley.

23      THE COURT:  Would you please swear this witness in.

24      THE CLERK:  Would you raise your right hand, please.

25      GWENDOLYN COOLEY, DEFENSE WITNESS, SWORN


3


1      THE COURT:  Go ahead.

2      MR. SANDMEYER:  Thank you, your Honor.

3          DIRECT EXAMINATION

4  BY MR. SANDMEYER:

5  Q.   Ms. Cooley, could you please tell us your relationship to

6  John Cooley?

7  A.   John is my first cousin.

8   Q.    What would you want Judge McLaughlin to know before he

9   passes sentencing in this case?

10  A.    Your Honor, I stand before you as a person who has grown

11  up with my cousin.  We all, when I say we all, I can look

12  around this room, there's not one person in here who has not

13  done something wrong by thought or deed.  But through divine

14  intervention, we were given an opportunity, another chance to

15  do what it is we have to do.  If we even go through the Bible,

16  look at how Jesus, how God used individuals who may have had

17  shaky backgrounds to lead the people out.  I cannot stand here

18  before you and say we have not done wrong.  That doesn't mean

19  that our lives have to be perfect.

20         Johnny is a good person.  I work for the school

21  district, I have 20 years with the school district.  Whenever I

22  have needed anything for the children that I'm working with, he

23  has been in to support me in whatever I have done.  He has

24  spoken to the young people about right and about wrong.

25         You learn from your mistakes.  But you don't let

4

1   your mistakes control you.  So what I'm saying to your Honor is

2  mistakes have been made, you learn from your mistakes.  And you

3  take that from the mistakes the strength and you move on, so

4  you can help someone else.  That's what I have to say, your

5  Honor.

6        THE COURT:  Thank you, Ms. Cooley, thank you very

7  much.

8        MR. SANDMEYER:  The defense would next call Mary

9  Taylor.

10        THE COURT:  Would you be so kind as to swear this

11  witness as well.

12        THE CLERK:  Could you please raise your right hand.

13          MARY TAYLOR, DEFENSE WITNESS, SWORN

14        THE COURT:  Good afternoon, Ms. Taylor.

15        THE WITNESS:  Good afternoon, sir.

16            DIRECT EXAMINATION

17  BY MR. SANDMEYER:

18  Q.   Ms. Taylor, what is your relationship to John Cooley?

19  A.   He's my brother.

20  Q.   What would you like the court to know before Judge

21  McLaughlin passes sentence in this case?

22  A.   I would just like to ask that -- if the court can please

23  show some compassion.  No just for my brother, but for my mom

24  and my dad.  They are really growing weary and sick behind this

25  because they know their son, my brother, is a good person.  And

5

1  when he came in this courtroom, I mean, it was said that they

2  did video or wire surveillance, they found nothing in 10 years,

3  they found nothing.  Even though they found nothing, they said

4  they were going to paint a picture.  And they not only painted

5  a picture, a bad picture of my brother, they've also let that

6  paint leak down onto the family.  And it has caused a lot of

7  hardship, not just for my brother, but myself and our children.

8          We are a good family.  And we do have a name where

9  in our sister state, which is Mississippi, we have a good name.

10  And we are a good family and we are a peaceful family.  We are

11  not drug dealers, liars, cheaters and thieves.  We are not.  We

12  try to be good people so that our children can be good people.

13  And God has been blessing us and blessing everybody.

14          But it seems like there's an element in the world

15  today that people don't even want to believe the truth anymore

16  when they hear it.  And they will stand up for wrong just to be

17  right with their friends.

18          We're just one family, we'd like to stay one family

19  and we'd like to stay together.  We've even had family members

20  pass away just waiting to see a loved one get out of jail.  We

21  have loved ones in jail that should not be in jail.

22          But it seems like the truth doesn't matter anymore.

23  You can hear the truth, and it doesn't seem to matter.  But I'm

24  hoping today that it will matter and that you will have some

25  mercy on my brother.

6

1          And, like I said, my mom and my dad, because they

2  are seriously ill.  My dad has got seriously ill behind this

3  because he knows his son is a good son.  He's had several

4  strokes because of life in prison.  Not only am I asking for

5  his children, but my parents, but I'm throwing us all on the

6  mercy of the court, just please don't send my brother to jail.

7  One day in jail for me, I don't know, I would kill myself --

8  because it's not a humane thing.  Thank you.

9          THE COURT:  Thank you very much for your time.

10          MR. SANDMEYER:  Your Honor, I have several documents

11  that have been shown to the United States Attorney's Office.

12  They have been presented to you by Mr. Cooley.  They are

13  certificates he received for educational courses he's taken, as

14  well as some correspondence from clergy.

15        THE COURT:  You would like to introduce those?

16        MR. SANDMEYER:  Yes, your Honor.

17        THE COURT:  All right.  Bring them on up.  We'll

18  mark them as Cooley Group Exhibit A.  Go ahead, sir.

19        MR. SANDMEYER:  Your Honor, at this point I would

20  just have argument for the court, and then Mr. Cooley would

21  like to make a statement.

22        THE COURT:  All right.  Let's start with your

23  argument first.

24        MR. SANDMEYER:  Yes, your Honor.  Your Honor, I

25  would ask the court at this point in time to incorporate the


7


1  objections that were filed earlier to the presentencing report.

2        THE COURT:  As if you're restating them here today?

3        MR. SANDMEYER:  Yes, your Honor.

4        THE COURT:  In other words, Ms. Frick's objection to

5  the original calculations?

6       MR. SANDMEYER:  That is correct, your Honor.

7       THE COURT:  All right.

8       MR. SANDMEYER:  Your Honor, before the court passes

9   sentence in this case, we would ask the court to consider

10  several points.

11      In the presentencing report there were several

12  statements that are attributed to people, such as Albert Boyd,

13  Jamie Burnett and Ken Henderson, that are being relied upon to

14  show an upward departure with regards to Mr. Cooley's case.

15  Mr. Boyd, we would just point out to the court and has been

16  shown, had mental issues for many years.  Additionally, did not

17  testify at trial.  The same went for Mr. Burnett, who did not

18  testify at trial.  Again, statements in the presentencing

19  report are hearsay statements.  Same would go for Mr.

20  Henderson, again, he didn't testify at trial.  Again, these are

21  hearsay statements.  Additionally, he, too, has issues with

22  regards to mental health.

23      Additionally, the jury in this case had evidence

24  presented to it that there was 187.4 grams, not 1.5 kilograms,

25  which is stated within the presentencing report.  It would be

1    the defense's contention that is not based on any evidence from

2    trial, but solely on the assumptions that the government had

3    built into the presentencing report.

4        Additionally, there is a two-point increase with

5    regards to the weapon, the weapon increase.  That there was a

6    weapon being used in regard to the offense.  The evidence at

7    trial showed that there was no weapon ever found on Mr. Cooley,

8    nor was a weapon ever seized from Mr. Cooley.  I would ask the

9    court to not consider that two-point increase.

10        And as to the four-point increase in the

11    presentencing report as to an organizational leader, it would

12    be our contention that the trial did not show that Mr. Cooley

13    had any sort of leadership role in any sort of criminal

14    organization in regards to illegal narcotics.  And that there

15    would be some necessary showing that he had people working

16    under him and he had control over an organization and people.

17    We would ask the court not to apply that four-point increase.

18        Mr. Cooley has a supportive family, as the court can

19    see, there are at least 25 people here in support of him.

20        Additionally, he has a background in the military,

21    served a year with the Pennsylvania National Guard as a radio

22    communications specialist.

23         But, most of all, the court has to determine whether

24    an individual has rehabilitative potential.  At this

25    resentencing, the court has before it information that wouldn't


9


1    have been available before.  Those are some of the reports from

2    the federal Bureau of Prisons in regards to courses that Mr.

3    Cooley has taken and is taking.  He has worked well in the

4    prison, there are statements that he has not had any problems.

5    He has shown that he is working to better himself.

6         THE COURT:  Excuse me one second.  Let me see those

7    documents.  Go ahead, Mr. Sandmeyer.

8         MR. SANDMEYER:  Additionally, your Honor, I have

9    letters from clergymen and women who have noticed a change in

10    his life.  A significant change in his life, and would ask the

11    court to consider that.

12         Basically, Mr. Cooley has shown a rehabilitative

13    potential in this case.  He has used his time productively in

14    prison by taking courses, by taking educational classes from

15  the Bible institute there.  And he also has a productive

16  employment history prior to his conviction.  So Mr. Cooley is

17  an individual who has the potential to lead a productive life.

18        The defense would request the court to consider a

19  sentence in the lower range of 10 years, not a sentence in the

20  upper range as has been suggested by the presentencing report

21  of life imprisonment.

22        Your Honor, Mr. Cooley would like to make a

23  statement to the court.

24        THE COURT:  Certainly.

25        THE DEFENDANT:  Good afternoon, your Honor.


                              10


1         THE COURT:  Good afternoon.

2         THE DEFENDANT:  First and foremost, I'd like to

3  thank God that I get the opportunity to be here today.  First I

4  want to say for the record I've forgiven each and every

5  individual that came before this court and gave their testimony

6  against me.

7         I would also like to take this time to thank my

8  family for their support.  Sometime in life -- I'm a little

9   nervous, sometime in life you sit down and make a change in

10  life.  But God has been good to me.  My stay in Albion was a

11  good stay.  I was able to work with people.  I worked as a

12  tutor teaching people general skills, general math and English,

13  things like that.  But I also worked in the church.  I sung in

14  the choir.  I did a Bible study and gave my life to God.  I

15  could not make it if I hadn't made that change in my life.

16  There were spots on my body and soul that were always looking

17  for God to fill that void in me.  I know that here -- what they

18  may have said I'm guilty of, I know for a fact God knows what I

19  did and what I didn't do.  And I know that I'm standing here

20  for some of the things I may have done and that I put out like

21  that.

22          But, sir, first before I go, I'd like to take this

23  time to apologize to my wife.  She's a good wife.  For the

24  adulterous life that I led, I feel on my soul.  And what I

25  would just say is I'm sorry.


11


1           And with that, sir, I would like to come before the

2   court, I'm not here to dishonor or disrespect anyone.  All of

3   those guys in whatever they had to say, I forgive them.  I have

4   no hard feelings towards them, no animosity towards them.  I

5   hope God forgives them in the way he has forgiven me.  That's

6   all I have.

7        THE COURT:  All right, Mr. Cooley, thank you, sir.

8        MR. SANDMEYER:  Your Honor, nothing further from the

9   defense.

10       THE COURT:  Do you have anything that you want to

11  say in conclusion or are you all done?

12       MR. SANDMEYER:  Your Honor, again, just to restate

13  the argument that we would ask the court to consider the lower

14  end of the sentencing range.

15       THE COURT:  Let me just make very clear, so we're

16  not ships passing in the night.  When you incorporated by

17  reference Ms. Frick's previous objections, you were, in

18  essence, reiterating her objection to the calculation that was

19  made there of 46 and a category II, is that right?

20       MR. SANDMEYER:  That is correct, your Honor.

21       THE COURT:  Very good.  All right, Mr. Trabold.

22       MR. TRABOLD:  Your Honor, the United States would

23  incorporate by reference our previous filings in this case,

24  which would be our response to the defense objections.  The

25  government also filed a motion for upward departure, which the

12

1  court previously declined on, based on essentially it was a

2  moot issue.  We would reincorporate that.  We also would ask

3  that the transcript of the previous sentencing hearing,

4  although, it has already been made part of the record, be

5  reincorporated as part of the record in this case.

6       THE COURT:  It is.

7       MR. TRABOLD:  Your Honor, there simply is no reason

8  for the court to deviate from the previous sentence of life

9  imprisonment in this case.  Nothing today has been presented

10  which should cause the court to question your previous

11  sentence.

12       Your previous sentence was based on the guidelines,

13  but it was also, I dare say, based on your feeling about the

14  conduct that Mr. Cooley engaged in over the 10-year time period

15  charged in the indictment.

16       The guidelines call for a sentence at a level 38 for

17  the distribution of 1.5 kilos of crack cocaine.  In our filing

18  in this case, the government makes note that even by a

19  conservative estimate, giving Mr. Cooley the benefit of the

20  doubt at every turn, it's clear that Mr. Cooley was involved in

21  the distribution of at least 45 kilos of crack over a 10-year

22  time period.  And, your Honor, there really isn't any dispute

23  about that.

24       Government witness after government witness after

25  government witness came forward to testify.  To call the

13

1  evidence against Mr. Cooley overwhelming would be a graphic

2  understatement, especially when you consider, even though Mr.

3  Cooley has offered his forgiveness to the witnesses that

4  testified against him, he apparently at the time that he was

5  questioned during the course of this investigation thought the

6  government's case against him was pretty good because when

7  questioned, he confirmed the strength of the government's case.

8  So his offer of forgiveness to witnesses that came forward and

9  plainly told the truth rings hollow here today.

10       In short, there is no reason for the court to

11  deviate from the life sentence in this case.  A life sentence

12  in this case is simply a reflection of the conduct that Mr.

13   Cooley engaged in for a lengthy period of time for which he

14   showed no remorse.  It is a reflection of the number of lives

15   that were destroyed as a result of the filth that Mr. Cooley

16   has spread on this community for a 10-year period of time.

17           If you look at the guidelines in this case, there

18   are a number of factors that go into arriving at a life

19   sentence.  And all of the factors that could be relied upon in

20   arriving at that sentence were proven beyond any shadow of a

21   doubt in this case.

22           Mr. Cooley was clearly the leader/organizer of the

23   operation to distribute crack cocaine.  Witness after witness

24   came forward to detail the acts that he undertook to direct

25   them in the distribution of crack cocaine.  Witness after


14


1   witness came forward to detail the acts that Mr. Cooley

2   undertook to obstruct justice in this case.

3           There was testimony from multiple witnesses that Mr.

4   Cooley used a weapon or was in the possession of a weapon or

5   utilized a weapon in the furtherance of this conspiracy.  The

6   only caveat that I want to mention with regard to the weapon is

7   even if the court were to find that there wasn't enough

8   evidence, despite the overwhelming evidence in the record that

9   there was a firearm, the firearm issue, in arriving at the

10   ultimate guideline calculation, is almost a moot point because

11   that would simply reduce the overall offense level to a 44,

12   which is still higher than the guidelines allow anyway.  That's

13   the only point I want to make with regard to the firearm issue.

14          Your Honor, in short, there's simply nothing that

15   has been presented here today which would call into question

16   the sentence that you previously imposed.  And the sentence

17   that you previously imposed was without question just and it

18   remains just today.  Thank you.

19          THE COURT:  I need to read these new submissions

20   from Mr. Sandmeyer, we'll take a five-minute recess, come back

21   and impose sentence.

22          (Recess from 2:02 p.m., until 2:07 p.m.)

23          THE COURT:  This is an order.  For the record the

24   defendant has, through counsel, incorporated by reference the

25   objections previously made to the sentencing calculations at

15

1  the original sentencing hearing.  I have carefully reviewed my

2  findings made at the original sentencing hearing, which

3  established a total offense level of 46.  With a criminal

4  history category of II.  I believe then and I believe now, that

5  those findings were fully supported by the record and that the

6  calculations were correct.

7        Consequently, I make the following calculations.

8  The total offense level applicable is a 46.  With a criminal

9  history category of II.  The statutory provision as to custody

10  is not less than 10 years to life.  The guideline provision is

11  life.  The statutory provision as to probation ineligible.

12  Also ineligible under the guidelines.  Statutory provision as

13  to supervised release less than five years.  Guideline

14  provisions not less five years.  The statutory provision as to

15  a fine not more than $4 million.  Guideline provisions $25,000

16  to $4 million.  Restitution is inapplicable under both the

17  statutory and guideline provisions.  And a special assessment

18  of $100 applies with respect to both.

19        Of course, in the wake of the recent decision by the

20  United States Supreme Court in United_States_v._Booker, 2005 WL
        _____ _____ __ _____

21  50108, January 12, 2005, I am fully aware that the Sentencing

22  Guidelines are now advisory only.  However, this court is still

23  obligated to consult the Sentencing Guidelines in determining

24  the appropriate sentence.  In addition to the Sentencing

25  Guidelines under Booker, I must also consider the other factors


16


1  set forth in Section 3553(a), which require courts to impose a

2  sentence "sufficient, but not greater than necessary" to comply

3  with the purposes set forth in paragraph two.  Section

4  3553(a)(2), states that such purposes are:

5        (A) to reflect the seriousness of the offense, to

6  promote respect for the law, and to provide for just punishment

7  for the offense;

8        (B) to afford adequate deterrence to criminal

9  conduct;

10        (C) to protect the public from further crimes of the

11  defendant; and

12        (D) to provide the defendant with needed educational

13  or vocational training, medical care, or other correctional

14  treatment in the most effective manner.

15        Section 3553(a) further directs sentencing courts to

file:///A|/COOLRESG.TXT

16   consider, (1) the nature and circumstances of the offense and

17   the history and characteristics of the defendant; the kinds of

18   sentences available; the need to avoid unwanted sentencing

19   disparities among similarly situated defendants with respect to

20   sentencing, and with similar records; and the need to provide

21   restitution to any victims of the offense.

22        In fashioning the sentence here, I have carefully

23   considered the advisory guideline sentence, as well as the

24   other factors which I have just articulated.

25        With respect to the nature and circumstances of the


17


1   offense, the evidence at trial demonstrated that the defendant

2   was a drug king pin in charge of a large cocaine distribution

3   ring bringing cocaine into this community.  It was in fact one

4   of the larger conspiracies prosecuted in this area.  The

5   evidence also reflected that the defendant used intimidation

6   and threats to protect his drug dealing operation.

7        This conduct, as reflected through the testimony and

8   evidence, reflects a complete lack of respect for the law, his

9   fellow citizens and even his own family members.  I am

10   convinced that if Mr. Cooley were released from jail, he would

11   quickly resume his criminal activities. Therefore, protection

12   of the public is of significant importance. Given the

13   magnitude of the crime involved, deterrence is also an

14   important consideration.

15        Would you please rise for sentencing. First of all,

16   for the record, it's my understanding that Mr. Cooley has

17   sometime ago paid to the United States the special assessment

18   of $100, which was imposed in connection with my original

19   sentence, is that your understanding, sir?

20        MR. SANDMEYER: That is correct, your Honor.

21        THE COURT: Pursuant to the Sentencing Reform Act of

22   1984, it is the judgment of the court that the defendant, John

23   Cooley, is hereby committed to the custody of the Bureau of

24   Prisons to be imprisoned for a term of life.

25        Mr. Cooley, do you understand that you have the


18


1   right to appeal this sentence, but if you choose to do so, you

2   must do so within 10 days; do you understand that?

3        THE DEFENDANT: Yes, sir.

4          THE COURT:  All right, we're adjourned.

5

6

7          (Whereupon, at 2:10 p.m., the Resentencing

8  proceedings were concluded.)

9

10

11                    - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

file:///A|/COOLRESG.TXT

19

1                C E R T I F I C A T E
                 – – – – – – – – – –

2

3

4

5      I, Ronald J. Bench, certify that the foregoing is a

6  correct transcript from the record of proceedings in the

7  above-entitled matter.

8

9

10

11

12  _____

13  Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25