E X H I B I T "B"

COURT'S OPINION

*[handwritten annotations in margins]*

UNITED STATES OF AMERICA v. JOHN COOLEY, Defendant.
UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA, ERIE DIVISION
243 F. Supp. 2d 329; 2003 U.S. Dist. LEXIS 1423
Criminal No. 02-40 Erie
January 16, 2003, Decided
January 16, 2003, Filed

**Editorial Information: Subsequent History**

Subsequent appeal at, Remanded by United States v. Cooley, 2005 U.S. App. LEXIS 9624 (3d Cir. Pa., May 24, 2005)

**Disposition**   United States' motion to disqualify defense counsel granted.

**Counsel**   U. S. Attorneys: Christian A. Trabold, Esq., United States Attorney's Office, Erie, PA.

For USA: Christian Trabold, AUSA, US Attorney's Office, Erie, PA.

For Defendant: Dennis Williams, Esq., Williams & Adair, Erie, PA.

**Judges:** Sean J. McLaughlin, United States District Judge.

Opinion

**Opinion by:**   Sean J. McLaughlin

{243 F. Supp. 2d 330} *MEMORANDUM ORDER*

Presently pending before the Court in this criminal matter is the government's motion to disqualify defense counsel, Dennis V. Williams, Esq. from his representation of Defendant John Cooley. The motion is premised upon the government's assertion of a potential conflict of interest arising from Mr. Williams's prior representation of two individuals whom the government expects to call as witnesses against Cooley in the event this case proceeds to trial.

Mr. Williams previously represented the two prospective witnesses (whom, for the sake of anonymity, we refer to hereafter as "John Doe 1" and "John Doe 2") in connection with unrelated drug trafficking charges. In June of 2002 Mr. Williams, although not yet formally representing Cooley, was disqualified from acting as counsel for John Doe 1 upon the government's motion. At the time, Cooley was evidently under investigation and had been in contact with Mr. Williams. It was assumed by the government, and apparently also by Doe 1, that Mr. Williams would represent Cooley in the event that he was formally charged. Doe 1, meanwhile, had been cooperating with the government by providing information about other individuals who were allegedly involved in illicit drug activity, including Cooley. According to the Assistant U.S. Attorney, Doe 1 had requested Mr. Williams's disqualification because of Doe 1's belief that Mr. Williams's allegiance to Cooley would potentially jeopardize his own case. The Court granted the government's motion to disqualify Mr. Williams on the grounds that there was a conflict between the interests of Doe 1 on the one hand (in providing information to the government which incriminated Cooley), and Cooley on the other (in avoiding such incrimination).

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Ex. "B"*

Mr. Williams entered his appearance in the case of John Doe 2 in early 2002, shortly before Doe 2 entered a guilty plea to an unrelated charge of conspiring to possess with the intent to distribute a controlled substance. Sentencing was originally scheduled to occur in August of 2002, but was postponed after the court granted the government's oral motion to disqualify Mr. Williams from further involvement in the case. The basis for the disqualification in *John Doe 2* was the same as that in *John Doe 1*, to wit, it was anticipated that Doe 2 would offer incriminating information against Cooley and possibly testify against Cooley in the event criminal charges were filed, and it was further anticipated that Mr. Williams would represent Cooley if he were so charged. The {243 F. Supp. 2d 331} court determined that a potential conflict of interest existed and, upon granting the government's motion, postponed the sentencing until a later date so that Doe 2 could obtain different counsel. Doe 2 was eventually sentenced to a term of incarceration.

In the instant case, the government first raised its motion to disqualify Mr. Williams at the time of Cooley's initial appearance before United States Magistrate Judge Susan Paradise Baxter on December 11, 2002. The government contends that Mr. Williams should be disqualified from acting as Cooley's counsel because it is anticipated that John Doe 1 and John Doe 2 will present incriminating testimony against Cooley in the event that Cooley's case proceeds to trial. Mr. Williams responds that he has never obtained any information in the course of his prior representations of Doe 1 and Doe 2 pertaining to the case against Cooley. Furthermore, it is Cooley's intention to waive any objection based on an actual or potential conflict of interest.

The right to counsel, as guaranteed by the Sixth Amendment to the U.S. Constitution, encompasses the accused's right to select and be represented by the attorney of his choice. *See Wheat v. United States*, 486 U.S. 153, 159, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988). Nevertheless, the "essential aim" of the Amendment is "to guarantee an effective advocate for each criminal defendant, rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* (citations omitted). Accordingly, when evaluating conflict-of-interest claims that implicate an accused's Sixth Amendment rights, the court's focus is on the integrity of the adversarial process as opposed to the accused's relationship with his lawyer as such. *Id.* (citation omitted). In evaluating the government's motion to disqualify Mr. Williams, we recognize Cooley's presumptive right to retain legal counsel of his choice. Nevertheless, "that presumption may be overcome not only by a demonstration of actual conflict of interest but by a showing of a *serious potential for conflict*." *Wheat*, 486 U.S. at 164 (emphasis supplied).

Mr. Williams has represented to this Court that he has acquired no confidential information from either Doe 1 or Doe 2 that bears on Cooley's criminal case. Thus, the argument goes, he is not in a position where he might be pressured to use Doe 1's or Doe 2's own confidential communications against them during cross-examination, should the need for such cross-examination present itself. Mr. Williams contends that the government cannot articulate any basis on which Cooley's defense would be jeopardized by virtue of a competing loyalty to the government witnesses. As far as Mr. Williams is concerned, he owes no duty of allegiance to Doe 1 or Doe 2 since he has been removed as their counsel. His only allegiance, he believes, is to his current client Cooley, and he therefore contends that no actual or serious potential for conflict exists in this case.

Unfortunately, we do not think the issue can be so easily dismissed. The nascency of Cooley's criminal case makes it difficult for all parties to fully appreciate and assess the true potential for conflict that is presented here. The Supreme Court has recognized the difficulty inherent in these situations:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions {243 F. Supp. 2d 332} of nascent

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

> conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand ....

> *Wheat*, 486 U.S. at 162-63.

Contrary to Mr. Williams's assertion, the mere fact that he is not currently possessed of privileged information from Doe 1 or Doe 2 relative to Cooley's alleged illicit activities does not end the inquiry. Regardless of what Doe 1 or Doe 2 may or may not have told Mr. Williams, the fact remains that they allegedly possess information that incriminates Cooley and, consequently, there is a very real possibility Mr. Williams may have to cross-examine his former clients concerning this information. Should this situation occur, Mr. Williams's duty to Cooley would require him to attack the credibility of his former clients on any available legitimate basis. At this point, even Mr. Williams cannot know for sure what bases might present themselves for attack. Nevertheless, the Third Circuit has recognized that "conflicts of interest arise whenever an attorney's loyalties are divided, and *an attorney who cross-examines former clients inherently encounters divided loyalties*." *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999) (emphasis supplied) (quoting *United States v. Moscany*, 927 F.2d 742, 750 (3d Cir. 1991)).

We find the case of *United States v. Bradford*, 121 F. Supp. 2d 454 (W.D. Pa. 2000) (Cohill, J.), to be instructive on this point. In *Bradford*, the defendant was represented by Joseph E. Hudak, Esq. on charges of possessing cocaine with the intent of distributing the same. Mr. Hudak concurrently represented another individual, Jamal Arnold, on an unrelated statutory rape case. Arnold, a fellow prison inmate of Bradford's, later became a prospective government witness in the *Bradford* case when it was learned that he had allegedly acquired incriminating admissions from Bradford relative to his pending drug conspiracy charge. The district court disqualified Mr. Hudak from further representation in the *Bradford* case, notwithstanding Mr. Hudak's assertion that he had learned nothing from Arnold as a result of their attorney-client relationship that pertained to Bradford's case. The court found that a potential conflict of interest existed, despite Mr. Hudak's offer to withdraw as counsel for Arnold:

> In order to effectively represent Bradford at trial, Hudak will have to cross-examine a former client testifying for the government and, regardless of Hudak's knowledge concerning Arnold's testimony, he presumably will have to attack Arnold's credibility. "Conflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *Moscany*, 927 F.2d at 750 (internal citations omitted). At trial, Hudak may be unwilling or unable to vigorously cross-examine Arnold due to Hudak's representation of Arnold. Thus, Bradford's right to effective counsel could be compromised as a result of Hudak's divided loyalties.

> 121 F. Supp. 2d at 456. The court declined Mr. Hudak's invitation to "examine 'what would actually be the subject of (his) cross-examination," noting that a defendant's trial strategy is never fixed and, "for the court to accept an assurance of a contemplated cross-examination, would be 'opening the door for a manufactured mistrial or a possible ineffective assistance of counsel claim on appeal.'" *Id.* (quoting *Stewart*, 185 F.3d at 122). We view *Bradford* as persuasive authority which buttresses this {243 F. Supp. 2d 333} Court's finding of a serious potential for conflict in the case at bar.

Furthermore, the possibility of this conflict of interest is not mooted by the fact that Mr. Williams's representation of Doe 1 and Doe 2 formally terminated when he was disqualified from their cases. "Conflicts arise ... in circumstances in which the [defendant's] counsel of ... choice may have divided loyalties *due to ... prior representation* of another client who is ... a government witness." *Stewart*, 185 F.3d at 121 (emphasis supplied) (quoting *Moscany*, 927 F.2d at 749). The termination of an

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

attorney-client relationship does not necessarily mark the termination of an attorney's duties toward his former client. See, e.g., *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 161 (3d Cir. 1984) ("The duty of loyalty does not always detach when the representation ends. A client has an expectation that the attorney will diligently pursue his goals until the matter is completely resolved, absent an effective waiver. In litigation, an attorney may not abandon his client and take a adverse position in the same case. This is not merely a matter of revealing or using the client's confidences and secrets, but of a duty of continuing loyalty to the client.") At least in the case of John Doe 1, no judgment of sentence has as yet been imposed by the Court. Doe 1 therefore has a continuing interest in optimizing his posture for sentencing purposes in his underlying criminal case. To the extent it would become Mr. Williams's job as Cooley's attorney to frustrate that effort, the respective interests of Doe 1 and Cooley are clearly at loggerheads.1

Nor does Cooley's purported waiver of the conflict resolve the issue. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160. Thus, "to protect the critically important candor that must exist between client and attorney, and to engender respect for the court in general, the trial court may enforce the ethical rules governing the legal profession with respect both to client-attorney communications and to conflict-free representation ... regardless of any purported waiver." *United States v. Moscany,* 927 F.2d 742, 749 (3d Cir. 1991). See also *Stewart,* 185 F.3d at 122 (trial courts have "an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver.") (quoting *Moscany,* 927 F.2d at 749). In addition, courts have an independent interest in protecting a fairly-rendered verdict from trial tactics that may be designed to generate issues on appeal. See *Moscany,* 927 F.2d at 748. For these reasons, district courts are afforded "substantial latitude {243 F. Supp. 2d 334} in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat,* 486 U.S. at 163. Because the Court perceives a serious potential for conflict in this case, we will grant the government's motion to disqualify Mr. Williams from further involvement as counsel for Cooley.2

Mr. Williams objects that the government "can't have it both ways" in this sense: the government successfully terminated his representation of Doe 1 and Doe 2 on the basis of his anticipated representation of Cooley; now the government seeks to have Mr. Williams removed as Cooley's counsel on the basis of his prior representation of Doe 1 and Doe 2. While this result may appear draconian at first blush, the Court remains convinced that there were and are valid reasons for Mr. Williams's disqualification in all three instances. In the cases of Doe 1 and Doe 2, Mr. Williams faced a serious potential conflict of interests by virtue of his anticipated representation of John Cooley, the individual against whom his then-clients sought to offer adverse testimony. Mr. Williams never foreswore his intention to represent Cooley, although in hindsight it appears that his doing so might have diffused both the prior and present conflicts. Mr. Williams's continued representation of Cooley in the face of his prior involvement with the government witnesses (particularly Doe 1, whose criminal case is still pending before the Court), now presents another potential for conflict which, although perhaps more subtle, is serious enough that it cannot be overlooked. Given the unique circumstances of this case, the Court does not criticize Mr. Williams for failing to recognize at the outset the potential problems which we now perceive. Nevertheless the Court feels that Mr. Williams's disqualification from this case is a necessary prophylactic measure which will best safeguard the integrity of Cooley's legal proceedings.

AND NOW, this *16th* day of January 2003, for the reasons previously set forth herein, IT IS HEREBY ORDERED that the Motion [Doc. No. 14] to Disqualify Defense Counsel filed by the United States is GRANTED.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.