---

E   X   H   I   B   I   T   **"J"**

---

1  witness may alone be of sufficient weight to sustain a verdict

2  of guilty. You should keep in mind, however, that such

3  testimony is always to be received with caution and weighed

4  with great care. You should never convict a defendant upon the

5  unsupported testimony of an alleged accomplice unless you

6  believe that testimony beyond a reasonable doubt. The fact

7  that an accomplice has entered a plea of guilty to the offense

8  charged is not evidence of the guilt of any other person.

9        In establishing that a substance is a controlled

10  substance, such as cocaine, the government need not rely only

11  on expert chemical analysis. A lay person may testify that the

12  substance involved was a specific type of drug.

13        A number of factors can permit you to determine that

14  a substance is a controlled substance, such as cocaine.

15  Namely, a high price paid for a small amount of substance; the

16  fact that the substance was a powder, the manner in which the

17  substance was packaged or contained; the fact that the witness

18  previously was involved in narcotic transactions; the fact that

19  the witness previously used the alleged substance and was

20  familiar with it effects; the witness's familiarity with the

21  specific language utilized by drug users and dealers; and the

22  fact that, when a witness distributed the substance to his

23  customers, none of them complained that it was not the

24  controlled substance represented.

25        As I mentioned at the beginning of the case, I'm

1   to the amendment reducing the highest level under the

2   guidelines from 42 to 38.  And if you look at the amendment,

3   your Honor, the amendment was made significantly finding that a

4   level 38 is more than enough and you need "an extraordinary

5   case" in order to make a finding.  And if you also look at

6   level 38, it says 1.5 kilos or more.  Now, I understand that

7   the application note provides for or more, but only under

8   extraordinary cases and in the cases they have found that to be

9   appropriate, once again, there was a seizure and there was

10  something from which the amounts could be calculated, other

11  than testimony from witnesses only, no corroboration.

12          THE COURT:  All right, thank you.  I'm going to take

13  a five-minute recess and look over my notes, based upon the

14  testimony and the arguments.  Then I'm going to come back and

15  rule on all of these issues, then we'll proceed to sentencing,

16  all right.

17          (Recess from 10:36 a.m.; until 10:42 a.m.)

18          THE COURT:  This is an order.

19                          ORDER

20          Presently pending before the court are several

21  objections filed on behalf of the defendant to the presentence

22  report.  I will take them up now seriatim.  The defendant

23  objects to the facts set forth in paragraphs 12 through 14;

24  paragraph 30; and paragraphs 31 through 32 of the presentence

25  report.  The specifics of which I incorporate herein by

1   reference in the interest of time.  It is, of course,

2   well-settled that factual matters may be considered at

3   sentencing "if they have some minimal indicium of reliability

4   based upon mere allegation." <u>United States v. Baylin</u>, 696 F.2d

5   1030, 1040 (3rd Cir. 1982).  I also note that United States

6   Sentencing Guideline 6A1.3 provides that a sentencing court

7   "may consider relevant information without regard to its

8   admissibility under the rules of evidence applicable at trial,

9   provided that the information has sufficient indicia of

10  reliability to support its probable accuracy."  After listening

11  to the testimony of Trooper Weindorf, insofar as the

12  allegations in paragraphs 12 through 14 are concerned, and also

13  after having heard the representations of the government as to

14  the manner or method in which the information contained in

15  paragraphs 30, 31 and 32 were secured, the court is of the

16  opinion that the factual recitation in those paragraphs does

17  bear the minimum indicia of reliability and, consequently, the

18  objections to those paragraphs are overruled.

19          Secondly, the defendant has objected to the

20  conclusion in paragraph 37 of the report that the evidence

21  supports a finding that the defendant's criminal activity

22  involved an amount of crack cocaine of over 1.5 kilograms and,

23  consequently, a base offense level of 38 was appropriate

24  pursuant to United States Sentencing Guideline 2D1.1(c)(1).

25  The defendant argues, in essence, that the amount of drugs

1  attributed in the presentence report is essentially

2  speculative.  Specifically, at page two of his position with

3  respect to sentencing factors, he details drugs seized from

4  various of Cooley's accomplices, noting that the total seizures

5  represented therein was approximately 187.40 grams, far less,

6  he alleges, than the 1.5 kilograms attributed to the defendant

7  by the probation officer.

8         The following legal principles guide my analysis as

9  to the appropriate resolution of this issue.  First.  That the

10  evidence upon which an approximation is based need not be

11  admissible at trial but must once again possess "sufficient

12  indicia of reliability to support it probable accuracy."

13  That's United States v. Gibbs, 190 F.3d 188 (3rd Cir. 2003).

14  Second.  In determining drug quantity, the court is permitted

15  to consider relevant conduct, including the conduct of

16  co-conspirators in furtherance of, and reasonably foreseeable

17  in connection with, the criminal activity jointly undertaken by

18  the defendant.  Gibbs, 190 F.3d at 214.  Third.  The court may

19  estimate drug quantity that is involved in a conspiracy based

20  on the evidence concerning average drug transactions during

21  that conspiracy.  Gibbs, at 219.  And, finally, the principle

22  is well-established that a leader of a drug conspiracy is

23  responsible for drug quantities that are distributed during the

24  life and course of that conspiracy by his subordinates in

25  furtherance thereof.  That's Gibbs, also, at 219.

Case 1:02-cv-00649-SJM-SPB Document 12-2 Filed 07/21/2008 Page 6 of 25

1    In this case I note that the following testimony and
2  evidence was elicited. Which having, of course, presided over
3  the trial, I found credible. Richard Figueroa testified that
4  during an approximate one-year period between 1993 and 1994 his
5  partner provided the defendant with nine to eighteen ounces of
6  crack on a regular weekly basis.

7    Second. James Crockett testified that from
8  approximately November, 2000 through January, 2001, the
9  defendant provided him over five kilograms of crack cocaine,
10  for which Cooley was paid approximately $1,000 for each ounce
11  of the crack cocaine.

12    Third. James Johnson testified that from 1992 to
13  1994, Cooley provided him with multiple ounce quantities of
14  crack cocaine. And, further, that Johnson observed Cooley
15  providing multiple ounces of crack cocaine to Curas Newsome
16  between '92 and '94.

17    And that in 2000, the year 2000, approximately nine
18  kilograms of crack cocaine were provided to Johnson by Cooley.

19    Fifth. There was testimony that Cooley supplied
20  Curas Newsome with crack cocaine from 1992 to 1998. He
21  traveled to Meadville from Erie and supplied her with multiple
22  quantities of crack cocaine on a regular basis. In
23  approximately 1994 Newsome moved to Erie, at which time the
24  defendant began to provide her with one-half kilogram
25  quantities of the drug at least every month for the purpose of

1  transporting those drugs back to Meadville. This arrangement

2  was a multiple year arrangement.

3        Sixth. There was also testimony concerning Cooley

4  providing Andre Henderson with crack cocaine between 1998 and

5  1999. The initial supplying represented approximately three

6  ounces of crack every two weeks for a couple of months.

7  Thereafter, for the next five months, approximately, five to

8  seven ounces of crack every two weeks. During the last five

9  months, the testimony indicated approximately 15 ounces of

10  crack every three weeks.

11        Seventh. Eric Tate, the testimony suggests,

12  approached the defendant concerning cocaine, crack cocaine in

13  1999. At which time the defendant directed Tate to James

14  Johnson. And thereafter Tate was supplied with multiple ounces

15  of crack on a number of occasions up through 2000.

16        The testimony further suggested that Raymond Simmons

17  observed the defendant pick up kilogram sized packages of crack

18  from a supplier to Simmons, Jose Velasquez. Velasquez

19  testified that he supplied one and one-half pound quantities of

20  crack cocaine to Cooley on at least three occasions.

21        Joseph Wayne testified that the defendant provided

22  him with over three kilograms of crack cocaine during the late

23  summer of 2000.

24        Larry Henry testified that from January, 2001

25  through approximately July, 2001, he received at least eight

52

1   kilograms of crack cocaine from the defendant.

2          Jamaal Smith testified that he received

3   approximately 25 to 50 rocks of crack from the defendant every

4   two weeks from approximately 1991 and continuing through 1993.

5          Shannon Mathis testified that Cooley supplied him

6   with three to seven ounces of crack every week from

7   approximately 1991 to 1993.

8          Here, in my view, the testimony as to the drug

9   quantities possessed does have a significant indicia of

10  reliability.  In my view, the testimony fairly reflects a

11  defendant who sat as the organizer of a massive and prolonged

12  drug distribution scheme.  I also note that the testimony of

13  Cooley's drug conspirators was consistent and mutually

14  reinforcing.  See United States v. Ventura, 353 F.3d 84 (1st

15  Cir. 2003), at page 88.

16         Having carefully considered the testimony relative

17  to the amount of drugs moving in this conspiracy, I find that

18  at a minimum drug quantity in the amount of 35 kilograms to 40

19  kilograms has been established.  The defendant's objection,

20  therefore, with respect to paragraph 38 of the presentence

21  report is denied.

22         The defendant also objects to an enhancement

23  pursuant to 2D1.1 of the Sentencing Guidelines.  2D1.1 provides

24  in pertinent part "if a dangerous weapon, including a firearm,

25  was possessed, increase by two levels."  I note in resolving

53

1    this issue that it is not necessary that a gun be recovered in

2    order to support the enhancement.  United States v. Givan, 320

3    F.3d 452, 464, (3rd Cir. 2003).  "Testimony that the defendant

4    was observed possessing a firearm is sufficient assuming its

5    reliability."  Givan, at 452.  In this regard I note and find

6    credible the testimony of Lamont Johnson, that Cooley

7    frequently carried a 9 millimeter firearm throughout the

8    conspiracy.  I also credit the testimony to the effect that

9    Cooley or the evidence to the effect that Cooley threatened to

10   kill Ken Henderson with a firearm by placing a loaded firearm

11   in his mouth.  I also credit the information relative to Albert

12   Boyd selling three semiautomatic pistols to the defendant in

13   1997.  I find, therefore, that the two-point increase is

14   appropriate, and the defendant's objection is overruled.

15        The defendant has objected to a four-level

16   enhancement pursuant to United States Sentencing Guideline

17   3B1.1(a), for his role as an organizer/leader of the criminal

18   activity.  The commentary to this sentencing guideline lists

19   the following factors that the court should consider in

20   distinguishing a leadership and organizational role from one

21   that might represent mere management or supervision:

22        (1)  the nature of participation in the commission

23   of the offense;

24        (2)  the recruitment of accomplices;

25        (3)  the claimed right to a larger share of the

54

1    fruits of the crime;

2         (4)  the degree of participation and planning or

3    organizing the offense;

4         (5)  the nature and scope of the illegal activity;

5    and

6         (6)  the degree of control and authority exercised

7    over others.

8         In this case I find that there is overwhelming

9    evidence that the defendant represented an organizer or leader

10   of the criminal activity as that term is understood under the

11   guidelines.  I note, for instance, that he recruited several

12   individuals to sell high quality crack cocaine for him,

13   including Shannon Mathis, James Johnson, James Crockett, Joseph

14   Wayne.  There was also credible testimony to the extent that he

15   claimed a larger share of the financial fruits of these crimes.

16   He also gave instructions as to how the conspiracy was to be

17   carried out in various ways.  For instance, he instructed

18   Johnson when and where and from whom to collect various debts.

19   He ordered that members of the conspiracy communicate via

20   Nextel phones, which he purchased.  He instructed members, such

21   as Curas Newsome, how to cook powder cocaine for the purpose of

22   eventually ending up with crack cocaine.  I find the four-level

23   enhancement is appropriate and the defendant's objection is

24   overruled.

25        The defendant objects to an obstruction of justice

55

1    enhancement pursuant to 3C1.1, which provides in pertinent

2    part:

3            "If (A) the defendant willfully obstructed or

4    impeded, or attempted to obstruct or impede the administration

5    of justice during the course of the investigation, prosecution

6    or sentencing of the instant offense of conviction ... increase

7    the offense level by two levels."  Here, I find the following

8    evidence credible which fully supports the obstruction

9    enhancement.

10           One.  Testimony to the effect that Cooley drove

11   Joseph Wayne passed the house where Wayne's children lived

12   stating "if you cross me, I know where your kids stay."

13           Two.  Testimony to the effect that Cooley told Potha

14   Boyd, that when Cooley went to prison, he was going to throw

15   Larry Henry off the top tier of the cellblock as a result of

16   Mr. Henry speaking with agents of the Federal Bureau of

17   Investigation.

18           Three.  Testimony to the effect that Cooley

19   approached Frank Crockett, the brother of James Crockett, and

20   informed Mr. Crockett to pass along a message to James Crockett

21   about his wife, Joyce Belle, to this effect.  "Tell Jimmy to

22   tell that bitch she better quit fucking with me or she's gonna

23   end up in the trunk of a car."  With respect to the threat

24   directed to Joyce Belle, there is no requirement that the

25   threat be made directly, as long as the threat is issued under

1  circumstances under which there is some likelihood of the

2  victim learning of that threat. United States v. Brooks,

3  957 F.2d 1138 (4th Cir. 1992). The defendant's objection with

4  respect to the obstruction of justice enhancement is denied.

5        Finally, the defendant objects to the probation

6  officer having attributed a criminal history category of II,

7  claiming that it overstates the seriousness of Mr. Cooley's

8  prior criminal conduct. In that regard, Section 4A1.3 provides

9  in relevant part:

10       "There may be cases where the court concluded that a

11  defendant's criminal history category significantly

12  over-represents the seriousness of a defendant's criminal

13  history or the likelihood that the defendant will commit

14  further crimes. An example might include the case of a

15  defendant with two minor misdemeanor convictions close to ten

16  years prior to the instant offense and no other evidence of

17  prior criminal behavior in the intervening period. The court

18  may conclude that the defendant's criminal history was

19  significantly less serious than that of most defendants in the

20  same criminal history category (Category II), and therefore

21  consider a downward departure from those guidelines."

22       In resolving this issue, I am, of course, bound by

23  the court's statement in United States v. Shoupe, 988 F.2d 440  criminal histo

24  (3rd Cir. 1993). Wherein, the Third Circuit stated the

25  following with regard to the frequency with which departures of

1   this nature should be granted:

2           "In so holding, we emphasize that a downward

3   departure under Section 4A1.3 is only justified in cases where

4   a defendant's criminal history category 'significantly

5   over-represents' the seriousness of defendant's past conduct

6   and future threat to society."  In this case I find,

7   particularly consistent with the standard in <u>Shoupe</u>, that the

8   criminal history category of II is not significantly

9   over-representative.  The previous conviction was a burglary

10  conviction, which was a felony.  And, in my view, a criminal

11  history category of II is appropriate.

12          Finally, given the court's resolution of the various

13  issues raised in the defendant's position with respect to

14  sentencing factors, it is unnecessary to reach the government's

15  motion for an upward departure, that motion now being denied as

16  moot.

17          That having been said, I now make the following

18  findings:  The total offense level applicable to this case is a

19  46.  With a criminal history category of II.  The statutory

20  provision with respect to custody is not less than 10 years to

21  life.  The guideline provision is life.  The statutory

22  provision as to probation ineligible.  The guideline provision

23  ineligible.  The statutory provision as to supervised release

24  not less than five years.  The guideline provisions five years.

25  Statutory provision as to a fine not more than $4 million.

1    Guideline provisions $25,000 to $4 million.  The statutory

2    provision as to restitution inapplicable.  The guideline

3    provision inapplicable.  A special assessment of $100 applies

4    both with respect to the statutory, as well as the guideline

5    provisions.

6          Now, Ms. Frick, prior to imposing sentencing in this

7    case is there anything that you would like to say or is there

8    anything that your client would like to say on his own behalf?

9          MS. FRICK:  Your Honor, just a couple of things.

10    I have three documents here.  One is a copy of the defendant's

11    honorable discharge from the military.  I'd like to make these

12    part of the record.  Another is a court order dated December

13    19, 2000, granting custody to the defendant of a minor child

14    after he has been approved by Erie County Children and Youth.

15    And as well as a Pennsylvania child abuse history clearance

16    pursuant to Act 33, which is done when a person is to have

17    children in custody or the type of job where he will have

18    children in custody.  I'd like to make these part of the

19    record, your Honor.

20          THE COURT:  Those are part of the record.

21          MS. FRICK:  Your Honor, my client does not wish to

22    make a statement.  He wanted me to make those documents

23    available for him.  The only thing that I have to say is that

24    based on the court's findings what the sentence will be, but I

25    also want to make part of the record that the presentence

Case 1:02-cr-00168-SJM-SPB Document 212 Filed 07/07/2006 Page 15 of 25

1   report basically tells a different story, as far as his

2   personal background, from the findings that the court has made,

3   as I'm sure you're very aware.  He comes from an extended and

4   loving family, as I'm sure the court notices, have been here

5   everyday during the trial and have basically packed the

6   courtroom on his behalf today.  He has children that he

7   supports.  He was employed, he was in the military.  All these

8   give a totally different picture of the defendant than what was

9   painted by the individuals who testified here.  I just want to

10  make all that part of the record.  That his family again is

11  here on his behalf, always have been.  As I'm sure you'll

12  recall from the detention hearing, the very heartfelt and deep

13  feelings they have for him as being a member of the family, and

14  leader in the family, for not only himself, his wife, his

15  children, but also for his siblings and his parents.  I just

16  wanted to bring all that to the court's attention, although,

17  the numbers are the numbers as to the court's finding, but I

18  wanted to present all those.

19          THE COURT:  Thank you, Ms. Frick.  Mr. Trabold.

20          MR. TRABOLD:  Your Honor, I won't belabor the point,

21  you presided over the trial, there is no reason to go into the

22  facts that was presented by the government.  I would just point

23  out that there are some themes that run throughout this case.

24  Several of them are illustrative of why the defendant finds

25  himself in this position here today.

1      First, that the defendant utilized people who were
2   at a place in their life where he found themselves easily taken
3   advantage of or in a precarious position.  Those who needed
4   money, those who were unemployed, those who had just gotten out
5   of jail, or moved back to Erie.  He also utilized young adults
6   during the course of this conspiracy.

7      Additionally, there is no question throughout the
8   government's case, and was buttressed by one of the defense
9   witnesses, that this defendant was able to avoid apprehension
10  throughout the course of this conspiracy because he had
11  advanced police information.  Numerous witnesses testified to
12  that.  And I would submit that the testimony of the one defense
13  witness buttressed the government's claims.

14     Additionally, throughout the course of this case, it
15  is clear that this defendant ran this conspiracy with
16  intimidation and fear.  Repeatedly threatened people.
17  Repeatedly told people if you cooperate against me, there's
18  going to be bad consequences for you.  All of this adds up to a
19  defendant that engaged in what can only be called the
20  destruction of lives of other people.  Both those people who
21  conspired against him and those people who were ultimately
22  consumers of the crack cocaine for no other reason than to
23  satisfy his own unquenchable thirst for money.  That's what
24  this case boils down to.  This defendant wanted money and he
25  wanted it over and over and over again.

1         Now, we come to today, today is the day when you

2   have to hold this defendant accountable for what he has done

3   throughout the course of this conspiracy.  We ask and justice

4   requires that you sentence him to life.  Thank you.

5         THE COURT:  Before imposing sentence in this case,

6   I want to take a minute and I want to speak beyond Mr. Cooley,

7   and I want to speak to specifically some of the young people

8   that are in this courtroom and have been here during earlier

9   portions of the trial.

10        Mr. Cooley has forfeited his ability to make choices

11  about his future.  But you haven't.  Mr. Cooley has now reached

12  the last stop on a dead-end road that he has been traveling for

13  years.  Now, think about this.  For the rest of his natural

14  life someone will tell him when to get up; when to go to bed;

15  what he can wear; who he can talk to; what he can eat; where he

16  can walk; what he can read; and when he can see his family.

17  Remember, also, all those people who testified in the case who

18  found themselves traveling that same road with Mr. Cooley.

19  Where are they.  They're all serving long prison terms.

20       My point is this.  Don't turn down Mr. Cooley's road

21  because once you get on it, there are only two exit ramps; one

22  is death and the other is prison.  Choose a better path.  Stay

23  away from the Cooley's of the world.  He was a drug kingpin.

24  Now he's the king of nothing.  Stand for sentencing.

25       Pursuant to the Sentencing Reform Act of 1984, it is

1   the judgment of the court that the defendant, John Cooley, is

2   hereby committed to the custody of the Bureau of Prisons to be

3   imprisoned for a term of life.

4         It is further ordered that the defendant shall pay

5   to the United States a special assessment of $100, which shall

6   be paid to the United States District Court Clerk forthwith.

7         The court finds this defendant does not have the

8   ability to pay a fine and, therefore, will waive a fine in this

9   case.

10         Mr. Cooley, do you understand that you have the

11   right to appeal this sentence that's been imposed here this

12   morning, and if you choose to do so, you must do so within 10

13   days?

14         THE DEFENDANT:  Yes, sir, I do.

15         THE COURT:  All right.  Anything further from the

16   defense?

17         MS. FRICK:  Nothing, your Honor.

18         THE COURT:  Anything further from the United States?

19         MR. TRABOLD:  No, your Honor.

20         THE COURT:  We're adjourned.

21

22         (Whereupon, at 11:16 a.m., the sentencing

23   proceedings were concluded.)

24

25                   - - -

63

C E R T I F I C A T E

    I, Ronald J. Bench, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Ronald J. Bench

1   witness came forward to detail the acts that Mr. Cooley
2   undertook to obstruct justice in this case.
3           There was testimony from multiple witnesses that Mr.
4   Cooley used a weapon or was in the possession of a weapon or
5   utilized a weapon in the furtherance of this conspiracy.  The
6   only caveat that I want to mention with regard to the weapon is
7   even if the court were to find that there wasn't enough
8   evidence, despite the overwhelming evidence in the record that
9   there was a firearm, the firearm issue, in arriving at the
10  ultimate guideline calculation, is almost a moot point because
11  that would simply reduce the overall offense level to a 44,
12  which is still higher than the guidelines allow anyway.  That's
13  the only point I want to make with regard to the firearm issue.
14          Your Honor, in short, there's simply nothing that
15  has been presented here today which would call into question
16  the sentence that you previously imposed.  And the sentence
17  that you previously imposed was without question just and it
18  remains just today.  Thank you.
19          THE COURT:  I need to read these new submissions
20  from Mr. Sandmeyer, we'll take a five-minute recess, come back
21  and impose sentence.
22          (Recess from 2:02 p.m., until 2:07 p.m.)
23          THE COURT:  This is an order.  For the record the
24  defendant has, through counsel, incorporated by reference the
25  objections previously made to the sentencing calculations at

1   the original sentencing hearing.  I have carefully reviewed my

2   findings made at the original sentencing hearing, which

3   established a total offense level of 46.  With a criminal

4   history category of II.  I believe then and I believe now, that

5   those findings were fully supported by the record and that the

6   calculations were correct.

7           Consequently, I make the following calculations.

8   The total offense level applicable is a 46.  With a criminal

9   history category of II.  The statutory provision as to custody

10  is not less than 10 years to life.  The guideline provision is

11  life.  The statutory provision as to probation ineligible.

12  Also ineligible under the guidelines.  Statutory provision as

13  to supervised release less than five years.  Guideline

14  provisions not less five years.  The statutory provision as to

15  a fine not more than $4 million.  Guideline provisions $25,000

16  to $4 million.  Restitution is inapplicable under both the

17  statutory and guideline provisions.  And a special assessment

18  of $100 applies with respect to both.

19          Of course, in the wake of the recent decision by the

20  United States Supreme Court in United States v. Booker, 2005 WL

21  50108, January 12, 2005, I am fully aware that the Sentencing

22  Guidelines are now advisory only.  However, this court is still

23  obligated to consult the Sentencing Guidelines in determining

24  the appropriate sentence.  In addition to the Sentencing

25  Guidelines under Booker, I must also consider the other factors

1  set forth in Section 3553(a), which require courts to impose a

2  sentence "sufficient, but not greater than necessary" to comply

3  with the purposes set forth in paragraph two.  Section

4  3553(a)(2), states that such purposes are:

5          (A) to reflect the seriousness of the offense, to

6  promote respect for the law, and to provide for just punishment

7  for the offense;

8          (B) to afford adequate deterrence to criminal

9  conduct;

10          (C) to protect the public from further crimes of the

11  defendant; and

12          (D) to provide the defendant with needed educational

13  or vocational training, medical care, or other correctional

14  treatment in the most effective manner.

15          Section 3553(a) further directs sentencing courts to

16  consider, (1) the nature and circumstances of the offense and

17  the history and characteristics of the defendant; the kinds of

18  sentences available; the need to avoid unwanted sentencing

19  disparities among similarly situated defendants with respect to

20  sentencing, and with similar records; and the need to provide

21  restitution to any victims of the offense.

22          In fashioning the sentence here, I have carefully

23  considered the advisory guideline sentence, as well as the

24  other factors which I have just articulated.

25          With respect to the nature and circumstances of the

1   offense, the evidence at trial demonstrated that the defendant

2   was a drug king pin in charge of a large cocaine distribution

3   ring bringing cocaine into this community.  It was in fact one

4   of the larger conspiracies prosecuted in this area.  The

5   evidence also reflected that the defendant used intimidation

6   and threats to protect his drug dealing operation.

7          This conduct, as reflected through the testimony and

8   evidence, reflects a complete lack of respect for the law, his

9   fellow citizens and even his own family members.  I am

10  convinced that if Mr. Cooley were released from jail, he would

11  quickly resume his criminal activities.  Therefore, protection

12  of the public is of significant importance.  Given the

13  magnitude of the crime involved, deterrence is also an

14  important consideration.

15         Would you please rise for sentencing.  First of all,

16  for the record, it's my understanding that Mr. Cooley has

17  sometime ago paid to the United States the special assessment

18  of $100, which was imposed in connection with my original

19  sentence, is that your understanding, sir?

20         MR. SANDMEYER:  That is correct, your Honor.

21         THE COURT:  Pursuant to the Sentencing Reform Act of

22  1984, it is the judgment of the court that the defendant, John

23  Cooley, is hereby committed to the custody of the Bureau of

24  Prisons to be imprisoned for a term of life.

25         Mr. Cooley, do you understand that you have the

18

1   right to appeal this sentence, but if you choose to do so, you

2   must do so within 10 days; do you understand that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  All right, we're adjourned.

5

6

7           (Whereupon, at 2:10 p.m., the Resentencing

8   proceedings were concluded.)

9

10

11                              - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19

C E R T I F I C A T E

     I, Ronald J. Bench, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____

Ronald J. Bench