IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 02-40 Erie |
| | ) | Civil Action No. 07-30 S |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| JOHN H. COOLEY, JR., | ) | |
| | ) | |
| Movant. | | |


MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO VACATE, SET ASIDE OR CORRECT SENTENCE
PURSUANT TO TITLE 28 U.S.C. SECTION 2255


NOW COMES, your movant, John H. Cooley, Jr., pro se and in proper person,

and moves this Court to vacate, set aside or correct his sentence in the above-styled case;

and in support of his motion your movant state as follows:

## GROUND 1

Cooley was denied the effective assistance of counsel as prescribed by the Sixth Amendment to the United States Constitution where counsel failed to challenge, at trial and sentencing, the district court's failure to submit the issue of drug quantity to the jury for determination, but rather, the trial judge alone made a drug quantity finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Vazquez*, 271 F.3d 93 (3d Cir. 2001).

## GROUND 2

Cooley's sentence was imposed in violation of the Fifth and Sixth Amendments to the United States Constitution and was in excess of the maximum authorized by law.

## GROUND 3

Cooley's Federal Indictment must be quashed and dismissed for want of Territorial Jurisdiction.

2

## STATEMENT OF THE CASE AND OF THE FACTS

On December 10, 2002, the grand jury for the Western District of Pennsylvania returned a one-count Indictment against Cooley. The indictment charged that from January 1992 and continuining thereafter until December 2002, Cooley conspired to distribute more than 50 grams of crack in violation of 21 U.S.C. Section 846.

The Government's case consisted primarily of admitted, convicted drug dealers and drug users. Those witnesses testified about various alleged narcotic transactions involving Cooley, over varying ranges of time. There was no physical evidence of a narcotic.

There were twelve such witnesses. With one exception, each of these twelve witnesses were either about to face a sentence for a Federal narcotic offense, or were in the midst of serving a substantial sentence for a Federal narcotics offense. The record disclosed that, for each witness in that position, the Government either already had, or was going to in the near future, file a motion for downward departure on the witness's sentence pursuant to Section 5K of the United States Sentencing Guidelines.

3

Cooley was tried before the Honorable Sean J. McGlaughlin and a jury. After a trial that stretched into the fifth day, on December 9, 2003, Cooley was found guilty. On February 25, 2004, Judge McGlaughlin sentenced Cooley. The jury did not make a finding on, nor was it instructed to make a finding on, the drug quantity involved in the conspiracy and attributable to Cooley. Neither did the jury make a finding on any of the facts used to enhance Cooley's sentence. The trial court, alone, made such findings based upon a preponderance of the evidence and went on to sentence Cooley to a life sentence - a sentence beyond the maximum for the crime of conviction. Cooley filed a timely notice of appeal on March 3, 2004.

Cooley challenged two of the trial court's evidentiary rulings. The Third Circuit determined that both challenges did not warrant reversal of Cooley's conviction. Cooley also challenged his sentence. The Third Circuit addressed the sentencing contention in the following manner:

> "At sentencing, the district court found that Cooley trafficked over 1.5 kilograms of crack cocaine, that he was the leader or organizer of a criminal activity that involved more than 5 criminal participants, that he possessed firearms during the conspiracy and that he attempted to obstruct the administration of justice. *Pursuant to the Sentencing Guidelines, the district court sentenced Cooley to life imprisonment - a sentence beyond the maximum for the crime of conviction.* In his appeal, Cooley argues that the district court's sentence violates United States v. Booker, U.S. 125 S.Ct. 738 (2005). Under Booker, mandatory enhancement of a sentence under the Sentencing Guidelines based on facts found by the court and not a jury violates the Sixth Amendment. Thus, after Booker the

4

Sentencing Guidelines are "effectively advisory." Id. at 757 . **Accordingly**, district courts will now consider the applicable advisory **Guidelines** in addition to the factors set forth in 18 U.S.C. 3553(a) . Id. at **764-65** . Booker is applicable to all cases on direct review. Id. at 769 . Cooley **did** not raise a Sixth Amendment challenge to his sentence in the district **court** and Booker was decided after he was sentenced. Nonetheless, pursuant **to our recent decision** in United States v. Davis, 407 F.3d. 162 (3rd Cir. 2005), we **will** remand for resentencing pursuant to Booker."

Cooley, 131 Fed. Appx. at 883.

Cooley's resentencing hearing was held on October 18, 2005, and again a life sentence was imposed. A timely notice of appeal was filed on October 24, 2005. Cooley reiterated the challenge to his sentence. On November 8, 2006, the **Third** Circuit affirmed the sentence of the district court on the ground that the sentence **complied with** *Booker.* Thus, this present Section 2255 motion is presented.

## STANDARD OF REVIEW

### A. The Section 2255 Standard

Under *Section 2255*, a prisoner may file a motion in the trial court challenging the validity of his sentence. *Morelli v. United States*, 285 F. Supp. 2d 454, 458 (D.N.J. 2003). Pursuant to *Section 2255*, a prisoner shall be released from custody if the sentence "(1) was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack." *Morelli*, 285 F. Supp. 2d at 458 (citing *28 U.S.C. 2255*). To establish a right to habeas corpus relief, a prisoner must demonstrate that the sentence has a fundamental defect resulting in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. See, e.g., *United States v. Deluca*, 889 F.2d 503, 506 (3d Cir. 1989); *Morelli*, 285 F. Supp. 2d at 459 (citations omitted). Given Cooley's pro se status, the Court should construe his motion liberally. See e.g., *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L. Ed. 2d 652 (1972). This Court has jurisdiction under *28 U.S.C. Section 1331*.

6

**B. Ineffective Assistance of Counsel Standard**

The Sixth Amendment guarantees that "in all criminal prosecutions the accused shall enjoy the right to have assistance of counsel for his defense." *U.S. Const. Amend. VI*. The Supreme Court has since held that defendants have the right not just to counsel but to "reasonable effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ; *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). In *Mempha v. Rhay*, 389 U.S. 128, 88 S.Ct. 254 (1967), the Supreme Court concluded that the Sixth Amendment right to counsel extends to the sentencing phase of trial. Noting the "critical nature of sentencing in a criminal case," the Court observed that an attorney could assist "in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence." *Id.* at 134-35, 88 S.Ct. at 256-57.

Although "[t]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal," *United States v. Frady*, 456 U.S. 152, 166, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) , the Third Circuit has recognized that "[t]he proper mechanism for challenging the efficacy of counsel is through a motion pursuant to *28 U.S.C. 2255*." *United States v. Tobin*, 155 F.3d 636, 643 (3d Cir. 1998), cert. denied, 525 U.S. 1171, 119 S. Ct. 1094, 143 L. Ed. 2d 94 (1999) . Under a collateral challenge a prisoner must show both (1) "cause" for not having raised the point in question on direct appeal

and (2) "actual prejudice" to him as a result of this error. *Frady*, 456 U.S. at 167 ; *United States v. Essig*, 10 F.3d 968, 979 (3d. Cir. 1993) . While "a successful showing of ineffective assistance of counsel may satisfy the 'cause' prong of the procedural default inquiry . . . it can only do so if the ineffectiveness rises to the level of constitutional deprivation under *Strickland.*" *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 753-54, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)) .

The *Strickland* Court established a two-pronged test to determine whether the assistance of defendant's counsel was so defective as to require reversal of a conviction. *Strickland*, 466 U.S. at 687 . First, the defendant must demonstrate that counsel's performance was deficient by showing that counsel's "errors were so serious" that counsel's representation fell below the level guaranteed by the Sixth Amendment . *Id.* Second, "[t]he defendant must show that the deficient performance prejudiced the defense." *Id.* In other words, the defendant must demonstrate that the errors made by counsel were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

## C. Evidentiary Hearing Standard

The facts established in a pro se petition should be accepted as true unless they are clearly frivolous. See *Government of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.

1989) (accepting the movant's averments as true), cert. denied, 500 U.S. 954, 111 S. Ct. 2262, 114 L. Ed. 2d 714 (1991) ; see also *Moore v. United States*, 571 F.2d 179, 184 (3d Cir. 1978) (accepting as true allegations made in a pro se opinion when the record did not expand upon the factual claims). While this Court must hold a hearing when there is a disputed issue of fact, it may dispense with the hearing if "the allegations . . . [are] patently frivolous" or "contradicted conclusively by the record." *Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001) . The petitioner is entitled to an evidentiary hearing as to the merits of his claim unless it is clear from the record that the prisoner is not entitled to relief. See *United States v. Victor*, 878 F.2d 101, 103 (3d Cir. 1989).

9

<u>LEGAL ARGUMENT</u>

GROUND 1

COOLEY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS PRESCRIBED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHERE COUNSEL FAILED TO CHALLENGE AT TRIAL AND SENTENCING THE DISTRICT COURT'S FAILURE TO SUBMIT THE ELEMENT OF DRUG QUANTITY TO THE JURY FOR DETERMINATION, BUT RATHER, THE TRIAL JUDGE ALONE MADE A DRUG QUANTITY FINDING IN VIOLATION OF *APPRENDI v. NEW JERSEY*, 530 U.S. 466 (2000) AND <u>*UNITED STATES v. VAZQUEZ*</u>, 271 F.3d 93 (3d Cir. 2001).

Cooley was indicted and tried for conspiracy to possess and distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. Sections 846 and 841. It is necessary, in order to explain the basis of Cooley's ineffective assistance of counsel claim, to first understand the relationship between *Apprendi* and Section 841 and *Vazquez* and Section 841.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant had fired several shots into the home of an African-American family that had recently moved into a New Jersey neighborhood. 530 U.S. at 469. After his arrest, he reportedly stated that he did not know the occupants personally but did not want African-Americans in his neighborhood. Id. at 469. He later, however, denied making such a statement. Id. at 469, 471. He pled guilty in state court to two counts of second-degree possession of a firearm for an

10

unlawful purpose, each of which carried a sentencing range of 5 to 10 years. Id. at 469-70. Subsequently, the prosecutor filed a motion to enhance the defendant's sentence pursuant to New Jersey's hate crime statute, which authorized an increased punishment for first-degree offenses based upon a trial judge's finding, by a preponderance of the evidence, that the defendant had committed the crime with a purpose to intimidate a person or group because of race. Id. at 470, 491-92 (discussing N.J. Stat. Ann. 2C:44-3(e) (West Supp. 2000)). After a contested evidentiary hearing, the trial court found, by a preponderance of the evidence, that the shooting was racially motivated and imposed a 12-year sentence on one of the second-degree counts. Id. at 471.

The Supreme Court granted certiorari and reversed, holding that the New Jersey sentencing procedures violated the Due Process Clause of the Fourteenth Amendment. In doing so, the Court articulated a new rule of constitutional law: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490 (emphasis added). Further, with the exception for prior convictions, the Court endorsed the following concept: " 'It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' " Id. (quoting *Jones v. United States*, 526 U.S. 227, 252-

11

53, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999) (Stevens, J., concurring)).

In *United States v. Vazquez*, 271F.3d 93 (3d Cir. 2001), at sentencing, the trial court, adhering to established law and custom, itself decided the issue of drug quantity under a preponderance of the evidence standard. Based largely on this finding, the court sentenced appellant, Alex Vazquez, to a prison term of 292 months (24 years and 4 months), which exceeded, by over 4 years, the statutory maximum authorized by the jury's factual findings. Subsequently, the Supreme Court held in *Apprendi* that a criminal defendant's constitutional rights are violated when his prescribed statutory maximum penalties are increased by any fact, other than a prior conviction, that a jury does not find beyond a reasonable doubt. *Id.* at 490. Vazquez challenged his sentence contending that, because the court did not submit the issue of drug quantity to the jury for determination, he must be resentenced in accordance with the default 20-year statutory maximum sentence that applies to cocaine offenses of unspecified drug quantity. Because Vazquez did not contest the drug quantity evidence at any stage of the proceedings, the Third Circuit reviewed his contention for plain error and concluded that Vazquez's sentence violated *Apprendi*, and therefore, the failure to submit drug quantity to the jury, and the imposition of a prison term in excess of 20 years, was erroneous. *Id.* at 490.

12

In Cooley's case, drug quantity was neither submitted to the jury nor reflected in its verdict. Therefore, 841(b)(1)(C) defines Cooley's prescribed statutory maximum sentence as 20 years. The Third Circuit indicated in *United States v. Williams*, 235 F.3d 858 (3d Cir. 2000), cert. denied, 2001 U.S. LEXIS 5558, 70 U.S.L.W. 3254 (U.S. 2001), and in *Vazquez*, that an *Apprendi* violation only occurs if the drug quantity is not found by a jury beyond a reasonable doubt and the defendant's sentence under Section 841 exceeds 20 years. In this case, the district court sentenced Cooley to life imprisonment. The court increased Cooley's penalty based on its finding, by a preponderance of the evidence, that he had been involved in trafficking 35 to 40 kilograms of crack cocaine. This 35 to 40 kilogram quantity led to Cooley's sentencing guideline range of a mandatory life sentence, which ultimately was imposed. The *Apprendi* violation occurred when the judge, rather than the jury, determined drug quantity and then sentenced Cooley to a mandatory life sentence, a term far in excess of his prescribed 20-year statutory maximum under Section 841(b)(1)(C). Besides the Third Circuit, other sister courts of appeals have similarly applied *Apprendi* to Section 841. E.g., *United States v. Hishaw*, 235 F.3d 565, 574-75 (10th Cir. 2000), cert. denied, 150 L. Ed. 2d 241, 121 S. Ct. 2254 (2001); *United States v. Doggett*, 230 F.3d 160, 164 (5th Cir. 2000), cert. denied, 148 L. Ed. 2d 1014, 121 S. Ct. 1152 (2001); *United States v. Rogers*, 228 F.3d 1318, 1327 (11th Cir. 2000).

13

The *Apprendi* rule is simple. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." There is no question that *Apprendi*, if applied to Cooley's case, would have precluded the trial judge from imposing a life sentence solely on the basis of the facts found by the jury. Those facts alone were insufficient because, as conceded and explained by the government in its Appellate Brief, "the jury's verdict established a base offfense level of 32, which, when coupled with Cooley's criminal history category, generated a Guidelines range of imprisonment of 135-168 months. U.S.S.G. Sentencing Table. The sentencing court's findings generated a total offense level of 46, which mandated a life sentence." See Appellate Brief for the United States, December 13, 2004, at pgs. 14-15.

To put it plainly, Cooley was originally sentenced under the Pre-Booker mandatory sentencing Guidelines. The facts found by the jury yielded a base Guideline range of 135-168 months imprisonment, a range the judge could not exceed without undertaking additional fact-finding. The judge did so, making a finding that (1) Cooley was responsible for 35 to 40 kilograms of crack cocaine, (2) Cooley possessed a firearm during the conspiracy, (3) Cooley was the leader or organizer of the conspiracy, and (4) Cooley obstructed justice. The facts supporting these findings were neither admitted by Cooley nor found by the jury. However, the trial judge's findings boosted Cooley's

**14**

sentence from a Guideline range of a 135-168 months to a Guideline range of a mandatory life sentence, which was the sentence imposed.

Thus, it is indisputable that Cooley's life sentence was imposed in violation of *Apprendi* and *Vazquez*, and that the *Apprendi* rule was settled law, as demonstrated in *Vazquez*, at the time of Cooley's trial, conviction and sentencing. The only question remaining is whether Cooley's trial counsel was ineffective for (1) failing to challenge the evidence of drug quantity on the ground that it must be found by a jury beyond a reasonable doubt, (2) failing to object to the court's failure to submit the drug quantity issue to the jury, and (3) because the element of drug quantity was not submitted to the jury and found beyond a reasonable doubt, failing to argue that the sentencing court was constrained by the 20-year maximum found in Section 841(b)(1)(C), in light of *Vazquez* and *Apprendi.*

As stated earlier, the standard for reviewing claims of ineffective assistance of counsel is prescribed by *Strickland* - deficient performance and whether such performance prejudiced the defense. *Id.* at 688-92. In conjunction with the *Strickland* standard, the Supreme Court has emphasized that prejudice results when ineffectiveness of counsel deprives a petitioner of a substantive or procedural right to which he is entitled under the law. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

15

In this case, the deficient performance of counsel is clear. Over 3 years prior to Cooley's conviction and sentencing, *Vazquez* had established that an *Apprendi* violation occurs if drug quantity is not found by a jury beyond a reasonable doubt and the defendant's sentence under Section 841 exceeds 20 years. See *Vazquez*, 217 at 99. In Cooley's case, the relevant facts are the same as in *Vazquez* - drug quantity was neither submitted to the jury nor reflected in its verdict, and Cooley's sentence far exceeded the 20-year maximum found in Section 841(b)(1)(C). Yet, counsel failed to challenge the clear *Apprendi* error. As here, where counsel completely failed to challenge the violation of Cooley's constitutional right to have drug quantity proved to a jury beyond a reasonable doubt, a right well established within the Circuit in which he was tried, convicted and sentenced, counsel's performance is indisputably unreasonable and "deficient" under *Strickland.*

Prejudice is also clear in this case. In <u>*Glover v. United States*</u>, 531 U.S. 198, 200, 121 S.Ct. 696, 148 L.Ed. 2d 604 (2001), the Supreme Court ruled that in the context of ineffective assistance of counsel at sentencing, prejudice is established if a defendant demonstrates that his sentence was increased by the deficient performance of his attorney. *Id.* In Cooley's case, had counsel challenged the trial court's failure to submit drug quantity to the jury to be found beyond a reasonable doubt, the sentencing court would have been constrained to sentence Cooley under the 20-year maximum found in

16

Section 841(b)(1)(C). However, counsel failed to do so, and that failure resulted in the imposition of a mandatory life sentence against Cooley. A sentence "beyond the maximum for the crime of conviction" and that far exceeded the 20-year maximum he would have been exposed to absent counsel's deficient performance. Thus, Cooley has demonstrated that his sentence was increased dramatically by the deficient performance of his attorney, establishing clear prejudice under both *Strickland* and *Glover.*

Moreover, prejudice from counsel's failure to challenge the *Apprendi* violation is inherent in this case. Although counsel challenged the drug quantity evidence on the ground that it was lacking in indicia of reliability and was not sufficiently corroborated, counsel did not challenge Cooley's sentence on the ground that it violated *Apprendi.* This failure was inherently prejudicial because appellate counsel did raise the *Apprendi* violation on appeal, however, the Third Circuit did not address the *Apprendi* issue because it was deemed waived by trial counsel's failure to preserve it at trial and at sentencing. Neither did the Third Circuit review the *Apprendi* issue for plain error. Instead, the Court ruled that Cooley's life sentence was "a sentence beyond the maximum for the crime of conviction", and characterized the challenge to the constitutionality of his sentence as a *Booker* issue and remanded for resentencing pursuant to *Booker. See, e.g., Cooley,* 131 Fed. Appx. at 883. In doing so, the *Apprendi* error in Cooley's case was negated by the retroactive application of the *Booker* remedy to his sentence,

17

which allowed the district court , at resentencing, to reimpose the same life sentence that the Third Circuit had rejected as "a sentence beyond the maximum for the crime of conviction." Though couched in the framework of *Booker*, in ruling that Cooley's life sentence was beyond the maximum for the crime of conviction, the Third Circuit affirmed that at the time of Cooley's sentencing on February 25, 2004, the binding nature of the then mandatory Guidelines would not permit the district court to impose a life sentence based upon facts not found by the jury, indicating a clear *Apprendi* error. However, while Cooley's case was still pending on direct appeal, *Booker* became law and applicable to all cases on direct review. The remedial holding of *Booker* changed the Guidelines from "mandatory" to "advisory", effectively changing the statutory maximum for Cooley's crime from that prescribed by the Guidelines to that prescribed by the statute governing the offense of conviction. The statutory maximum prescribed by the statute governing Cooley's offense of conviction is a life sentence. Thus, because *Booker* was the law at the time that Cooley's case was remanded for resentencing, the district court was authorized, under the *Booker Remedy*, to reimpose a life sentence against Cooley without offending *Apprendi.*

Consequently, because the judge, rather than the jury, determined drug quantity and then sentenced Cooley to a mandatory life sentence, a term far in excess of his prescribed 20-year maximum under Section 841(b)(1)(C), counsel's failure to challenge the *Apprendi - Vazquez* error at trial or at sentencing, exposed Cooley to the retroactive,

18

detrimental, remedial holding of *Booker*, which validated an otherwise invalid sentence, and was inherently prejudicial.

Moreover, the Supreme Court has emphasized that "prejudice results when ineffectiveness of counsel deprives a petitioner of a substantive or procedural right to which he is entitled under the law." *Lockhart, supra.* There is no question that Cooley has a substantive right under *Apprendi* and *Vazquez* to have drug quantity determined by the jury beyond a reasonable doubt. Here, Cooley was deprived of that substantive right when the district court determined drug quantity alone and sentenced Cooley to a sentence grossly beyond the statutory maximum for the crime of conviction. Thus, counsel's failure to challenge the deprivation of such a right is prima facie prejudicial under *Lockhart.*

Ultimately, counsel's ineffectiveness in failing to challenge a clear *Apprendi - Vazquez* error was indisputably prejudicial. Cooley was thus deprived of his Sixth Amendment right to the effective assistance of counsel, and his conviction should be reversed and a new trial ordered.

GROUND 2

**COOLEY'S SENTENCE WAS IMPOSED IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND WAS IN EXCESS OF THE MAXIMUM AUTHORIZED BY LAW.**

On December 2, 2002, Cooley was indicted with one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. Sections 841 and 846. After trial in December 2003, Cooley was found guilty by jury verdict. On February 25, 2004, Judge McLaughlin sentenced Cooley . The jury did not make a finding on the drug quantity involved in the conspiracy and attributable to Cooley. Neither did the jury make a finding on any of the facts used to enhance Cooley's sentence. The trial court, alone, made such findings based upon a preponderance of the evidence and went on to sentence Cooley to an enhanced, mandatory life sentence - a sentence beyond the maximum for the crime of conviction.

Cooley appealed his convictions and sentences, raising evidentiary issues and challenging his sentence on the ground that it violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and *Blakely v. Washington*, 159 L.Ed. 2d 403, 124 S.Ct. 2531 (2004). The Supreme Court held in *Apprendi* and *Blakely* that other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. It is undisputed that in Cooley's case, this was not done. In addressing the issues on Cooley's direct appeal, the Third Circuit Court of Appeals did not address the *Apprendi* and *Blakely* issue because it was deemed waived by trial counsel's failure to

preserve it at trial and at sentencing. Neither did the Third Circuit review the *Apprendi* issue for plain error. Instead, the Court ruled that Cooley's life sentence was "a sentence beyond the maximum for the crime of conviction" and characterized Cooley's *Apprendi* claim as a *Booker* issue, vacated his life sentence and remanded for resentencing pursuant to *Booker*. See, e.g., *Cooley*, 131 Fed. Appx. at 883. In doing so, the *Apprendi* error in Cooley's case was negated by the retroactive application of the *Booker Remedy* to his sentence. Thus, on October 21, 2005, the district court resentenced Cooley to Life imprisonment again.

Title 28 U.S.C. Section 2255 provides for relief on the following grounds: (1) the sentence was imposed in violation of the Constitution; (2) the sentence was imposed in violation of the laws of the United States; (3) the Court was without jurisdiction to impose the sentence; (4) the sentence was in excess of the maximum authorized by law; or (5) the sentence is otherwise subject to collateral attack. The questions that must be answered in this case are: (1) whether sentencing Cooley to a sentence imposed in violation of the Constitution of the United States or in excess of the maximum authorized by law violates his constitutional rights; (2) whether Cooley is entitled to relief because his sentence was imposed in violation of the Constitution of the United States or because his sentence was in excess of the maximum authorized by law; or (3) whether the sentence is otherwise subject to collateral attack.

At the onset, it is averred that Cooley's present challenge to the constitutionality of his sentence is not procedurally defaulted. Of course, a section 2255 motion may not be used as a substitute for a direct appeal. See *United States v. Frady*, 456 U.S. 152, 165, 71 L. Ed. 2d 816, 102 S. Ct. 1584 (1982). Where a petitioner does not bring a claim on direct appeal, he is barred from raising that claim in a subsequent section 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom. See, e.g., *Amiel v. United States*, 209 F.3d 195, 198 (2d Cir. 2000) (citing *Billy-Eko v. United States*, 8 F.3d 111, 115 (2d Cir. 1993)); *United States v. Canady*, 126 F.3d 352, 359-60 (2d Cir. 1997) (citing *Reed v. Farley*, 512 U.S. 339, 345, 129 L. Ed. 2d 277, 114 S. Ct. 2291 (1994)); *Campino v. United States*, 968 F.2d 187, 189 (2d Cir. 1992). This rule also applies where the defendant fails to appeal at all. See *United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995) ("cause and prejudice" requirement applies where there is a "complete failure to take a direct appeal"). The term "cause" means "something external to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991) (emphasis in original).

However, where a ground raised in a section 2255 motion is based on ineffective assistance of counsel, the rule requiring the ground to have been raised on appeal does not apply on the theory that the ineffective assistance of counsel itself provides the "cause" for the failure to appeal the issue. See, e.g., *Bloomer v. United States*, 162 F.3d 187, 192 (2d

Cir. 1998); *Riascos-Prado v. United States*, 66 F.3d 30, 34-35 (2d Cir. 1995) (citing *Billy-Eko v. United States*, 8 F.3d at 115). Inasmuch, in the case at bar, appellate counsel did challenge Cooley's sentence on direct appeal on the ground that the sentence violated *Apprendi* and *Blakely*. However, because trial counsel failed to preserve the *Apprendi* error at trial or sentencing, that claim was deemed waived, and theThird Circuit elected to characterize the *Apprendi* error as a *Booker* issue. Thus, to the extent that Cooley raises a bona fide claim of ineffective assistance of counsel, the doctrine requiring that claims be raised first on appeal would not bar him from obtaining section 2255 review.

## I. COOLEY'S SENTENCE WAS IN EXCESS OF THE MAXIMUM AUTHORIZED BY LAW

Here, on direct appeal, the Third Circuit remanded for resentencing and made the following finding: The district court's imposition of an enhanced, mandatory life sentence against Cooley was "a sentence beyond the maximum for the crime of conviction". *Cooley*, 131 Fed. Appx. at 883. The Third Circuit thus clearly stated that this Court erred in sentencing Cooley to life imprisonment on February 25, 2004. At the time Cooley was sentenced, neither *Blakely* nor *Booker* had been decided. Before Cooley filed his appeal, *Blakely* was settled law. However, before Cooley's appellate issues were reviewed, *Booker* became settled law and made applicable to all cases pending on direct review.

23

As explained earlier, the remedial holding of Booker negated the *Apprendi* error in Cooley's case. Nonetheless, as established by theThird Circuit when it vacated Cooley's sentence and remanded for resentencing, the life sentence imposed against him on February 25, 2004, was in *excess of the maximum authorized by law*, and absent counsel's ineffectiveness, as a matter of law, a life sentence could not have been imposed.

## II. COOLEY'S SENTENCE WAS IMPOSED IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

The Fifth Amendment's due process clause and the Sixth Amendment's right to jury trial clause prohibits the sentencing judge from making additional findings of fact if those findings would subject the defendant to greater punishment, even if the legislature purports to grant to the court such authority. *Blakely*, 124 S. Ct. at 2536-40 ; *Apprendi*, 530 U.S. at 490 . The legislature cannot establish a maximum sentence for a crime and then permit the judge to increase that sentence based on independent factual findings. This would effectively punish the defendant for criminal acts not submitted to a jury or proved beyond a reasonable doubt. See *Blakely*, 124 S. Ct. at 2539 (stating that this sentencing procedure would relegate the jury trial to "a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish"). The Constitution forbids such a result. The judge's sentencing discretion is based on the limits set by the legislature and the facts found by the jury. Id.; *Apprendi*, 530 U.S. at 490.

The United States Sentencing Guidelines represent an exercise of legislative authority and have the force of law. *Mistretta v. United States*, 488 U.S. 361, 370-71, 380-85, 393-96, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989) ; *Stinson v. United States*, 508 U.S. 36, 42-43, 123 L. Ed. 2d 598, 113 S. Ct. 1913 (1993) . In conjunction with the United States Code, the Guidelines define offenses and prescribe maximum punishments. The jury finds the facts necessary to subject the defendant to the maximum punishment. This maximum punishment is the "statutory maximum" for Blakely purposes. The judge determines the sentence that should be imposed within the "statutory maximum." *Blakely*, 124 S. Ct. at 2536-40 (citing *Apprendi*, 530 U.S. at 490 ). The judge may not make additional findings that would increase the sentence above the "statutory maximum," even if the Guidelines purport to allow this. To do so would allow the judge to subject the defendant to greater punishment than that permitted under governing law based on the facts found by the jury. See Id. at 2539.

As a determinate sentencing regime promulgated through the exercise of legislative authority, the United States Sentencing Guidelines implicate the constitutional rights recognized in *Blakely*. See  *Blakely*, 124 S. Ct. at 2549-50 (O'Connor, J., dissenting); *Ameline*, 376 F.3d at 974-78 ; *Booker*, 375 F.3d at 510-15 ; *United States v. O'Daniel*, 328 F. Supp. 2d 1168, No. 02-CR-159-H, 2004 WL 1767112, at *5-6 (N.D. Okla. Aug. 6, 2004) . The "statutory maximum" sentence that may be imposed on a defendant is that permitted

under the Guidelines based on facts submitted to a jury and proved beyond a reasonable doubt. See *Blakely*, 124 S. Ct. at 2549-50 ; *Apprendi*, 530 U.S. at 490 . Once this maximum is established, the court may employ the Guidelines as they were intended, conducting an independent evaluation of the record, supplemented by additional evidence introduced at a sentencing hearing, and making independent findings of fact. See U.S. SENTENCING GUIDELINES MANUAL Section 6A1.3 (2003); see also FED. R. CRIM. P. 32 ; U.S. SENTENCING GUIDELINES MANUAL Section 1B1.4 (citing 18 U.S.C. Section 3661 ). Based on these findings, and considering both available enhancements and reductions, the appropriate Guidelines sentence may be determined. See Id. Section 1B1.1 . As long as this sentence does not exceed the "statutory maximum," the judge may impose the sentence without constitutional qualm. *Blakely*, 124 S. Ct. at 2536-40 .

Clearly, the sentencing judge in this case deviated from the sentencing regiment cited above and made additional findings that increased the sentence above the "statutory maximum," subjecting Cooley to far greater punishment than that permitted under governing law based on the facts found by the jury. See Id. at 2539. Such a sentence violated Cooley's Fifth Amendment due process rights and his Sixth Amendment right to jury trial. The Constitution forbids such a result. See Id. at 2536-40 ; *Apprendi*, 530 U.S. at 490.

26

III.   IT WOULD BE A COMPLETE MISCARRIAGE OF JUSTICE AND VIOLATIVE OF
DUE PROCESS AND EX POST FACTO PRINCIPLES NOT TO VACATE COOLEY'S
SENTENCE

Federal courts have held it was a fundamental miscarriage of justice to require a

defendant to serve time under sentencing provisions of which he was actually innocent.

*Jones v. Arkansas*, 929 F.2d 375 (8th Cir. 1991); *United States v. Maybeck*, 23 F.3d 888

(4th Cir. 1994). Inasmuch, when a defendant is sentenced to an enhanced term of

imprisonment based on a jury's general verdict, this is error that seriously affects the

fairness, integrity, or public reputation of judicial proceedings and constitute a complete

miscarriage of justice. *Ballard v. United States*, 400 F.3d 404, 410 (6th Cir. 2005).

Here, Cooley is serving a life sentence imposed under sentencing provisions

(advisory sentencing guidelines created by the *Booker Remedy*) that were neither the law

at the time he committed the crime of conviction nor at the time he was originally

sentenced. Thus, Cooley is "actually innocent" of the sentencing provisions under which

the life sentence he now serves was imposed, and requiring him to serve a life sentence

imposed under sentencing provisions of which he is actually innocent is a "complete

miscarriage of justice". *Maybeck* and *Graziano*, supra. Furthermore, where Cooley was

sentenced to an enhanced mandatory life sentence based on facts not found by the jury

and the Third Circuit ruled that such a sentence was illegal, it is a fundamental

27

miscarriage of justice to legalize an otherwise illegal sentence under sentencing provisions that were not in place at the time the illegal sentence was imposed. Not only was it a miscarriage of justice to legalize a prior illegal sentence by applying sentencing provisions that were not in effect at the time Cooley committed his crime, but, it is also a denial of due process and a violation of the Ex Post Facto Clause.

Cooley was originally sentenced on February 25, 2004, under the mandatory, Pre-*Booker* Guidelines. On that date, the district court sentenced him to life imprisonment. A sentence that was not authorized under the sentencing provisions in effect at that time, and therefore, beyond the maximum for the crime of conviction. On appeal, the Third Circuit vacated the illegal sentence and remanded for resentencing pursuant to sentencing provisions that came into effect while Cooley's case was pending on direct review but were neither in effect at the time he committed his crime, nor on February 25, 2004, when he was originally sentenced. Under the newly enacted sentencing provisions (the *Booker Remedy*), the district court was authorized to, and did impose the life sentence previously vacated as illegal.

A violation of the ex post facto clause of the Constitution, U.S. Const. Art. 1 & 9, cl. 3 (Congress); occurs when a criminal law is applied retrospectively to events occurring before enactment of the law, and the offender is disadvantaged by that application. *Weaver v. Graham*, 450 U.S. 24, 29, 67 L.Ed.2d 17, 101 S.Ct. 960 (1981). Sentencing

Cooley under the newly enacted *Booker Remedy* clearly shows retroactive application. It is also indisputable that Cooley was severely disadvantaged and prejudiced by the retroactive application of the *Booker Remedy*. Because under the circumstances of his case, Cooley could not have received a life sentence under the sentencing provisions in effect at the time he committed his crime. The maximum sentence he could have received was 20-years. This truth is underscored by the fact that the Third Circuit vacated the life sentence imposed under the sentencing provisions in effect at the time Cooley committed his crime and ruled that such a sentence was illegal.

As a general rule, a district court must sentence a defendant based on the Guidelines in effect on the date of the sentencing. 18 U.S.C. Section 3553(a)(4). However, almost every circuit, including the Third Circuit, has held that the Ex Post Facto Clause of the Constitution prohibits application of a guidelines provision not in effect on the date of the offense if the new provision operates to the detriment of the defendant. See *United States v. Kopp*, 951 F.2d 521, 526 (3d Cir. 1991); see also *United States v. Schnell*, 982 F.2d 216, 218 (7th Cir. 1992), listing representative cases so holding from each of the other eleven circuits. Inasmuch, applying the ex post facto clause to Sentencing Guidelines amendments is consistent with the Supreme Court's opinion in *Miller v. Florida*, 482 U.S. 423, 96 L.Ed.2d 351, 107 S.Ct. 2446 (1987), in which it considered the ex post facto clause in connection with Florida's sentencing guidelines. The Court held that "every law that

**29**

changes the punishment, inflicts greater punishment, than the law annexed to the crime when committed", implicates ex post facto concerns. *Miller*, 482 U.S. at 429. *Miller* is directly applicable to the federal sentencing guidelines, which are substantially similar to Florida's. Thus, sentencing Cooley under the *Booker Remedy*, which was not in force when he committed his offense, and permitted a severe increase in his sentence that was not permitted prior to its enactment, denied him due process and violated the ex post facto clause of the Constitution.

Finally, the fact that Cooley will serve the rest of his life in prison because the district court illegally imposed such a sentence, and the fact that a change of law *after the fact* authorized the re-imposition of that illegal sentence, cannot be overlooked non-chalantly. Confining a man in prison for the rest of his life under an improper sentence is not a thing of mediocrity. It is indeed a draconian evil, and no court of justice would require a man to serve the remainder of his life in prison when it knows the sentence is improper. Therefore, the fairness, integrity, and public reputation of the American judicial system demand that Cooley's sentence be vacated.

GROUND 3

**Cooley's Federal indictment must be quashed and dismissed for want of Territorial Jurisdiction.**

Cooley now challenges the Federal Government's jurisdiction in sustaining his conviction for alleged crimes that occurred within the borders of the State of Pennsylvania. There is no presumption in favor of jurisdiction, and the basis for jurisdiction must be affirmatively shown. *Hartford v. Davis*, 16 S.Ct. 1051 (1896). The exclusive legislative jurisdiction of the Federal Government is not addressed in principle to subject matter, but to geographical location. It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction. Federal criminal jurisdiction is never presumed; and must always be proven, and can never be waived. *United States v. Rogers*, 23 F. 658 (D.C. Ark. 1885).

In a criminal prosecution where the Federal Government is a moving party it must not only establish ownership of the property upon which the crimes allegedly occurred but it must also produce documentation that the state has ceded the juridiction to that property to it. *Fort Leavenworth Railroad v. Iowa*, 114 U.S. 525 (1885). No jurisdiction exist in the United States to enforce federal criminal laws until consent to accept jurisdiction over acquired lands have been published and filed on behalf of the United States as provided and filed in 40 U.S.C. Section 255, and the fact that the

state authorized the Federal Government to take and exercise jurisdiction was immaterial. *Adams v. United States*, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943).

The sole question here is whether the geographical location, in the State of Pennsylvania, where Cooley allegedly committed the crimes for which he was indicted was within the exclusive jurisdiction of the United States. There is no queston that the United States had the constitutional power to acquire any territory within the State of Pennsylvania for the purposes enumerated in Article 1, section 8, clause 17:

> **The Congress shall have power . . . To exercise exclusive legislation in all Cases whatsoever, over such District (not exceeding ten miles square) as may, by Cession of particular states, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in Which the Same Shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings. . . .**

**U.S. Const. art. I, section 8, cl. 17.**

Under Article 1, section 8, clause 17 of the United States Constitution , the United States can obtain exclusive federal jurisdiction over land with the consent of the state. *Paul v. United States*, 371 U.S. 245, 264, 83 S. Ct. 426, 9 L. Ed. 2d 292 (1963) . This can be accomplished through a consensual acquisition or by a condemnation followed by a cession of jurisdiction. *United States v. Jenkins*, 734 F.2d 1322, 1325 n.3 (9th Cir. (1983) . After the state consents, the United States must formally accept

32

exclusive federal jurisdiction. 40 U.S.C. Section 3112 ; *Paul*, 371 U.S. at 264 ; *Jenkins*, 734

F.2d at 1325 n.3. When the Federal Enclave Clause is complied with, the state loses all

legislative power over the property in question, except such authority as it explicitly

reserves to itself in ceding jurisdiction. *Paul*, 371 U.S. at 263-69 ; <u>*Fort Leavenworth R. Co.*</u>

<u>*v. Lowe*</u>, 114 U.S. 525, 5 S. Ct. 995, 29 L. Ed. 264 (1885) . Whether or not the Federal

Government acquired exclusive jurisdiction over the lands where Cooley allegedly

violated federal law or the State reserved, as it could, jurisdiction over the crimes there

committed, depends upon the terms of the consent or cession given by the legislature

of Pennsylvania, if it indeed consented or ceded. <u>*James v. Dravo Contracting Co*</u>. 302 U.

S. 134, 146-148, 82 L. ed. 155, 164-166, 58 S. Ct. 208, 114 A.L.R. 318.

The federal courts must take judicial notice of the Pennsylvania statutes.

<u>*Owings v. Hull*</u>, 9 Pet. 607, 9 L. ed. 246; <u>*Lamar v. Micou*</u>, 114 U. S. 218, 223, 29 L. ed. 94,

95, 5 S. Ct. 857. If these statutes did not give to the United States exclusive jurisdiction

over the lands where Cooley allegedly violated federal law, the indictment did not

charge a crime cognizable under the authority of the United States.

On December 9, 2003, the defendant, John Cooley, was convicted by a jury on

charges of conspiracy to distribute crack cocaine in various geographical locations in

Erie, Pennsylvania. On February 25, 2004, Cooley received a sentence to a term of

incarceration for life.

It is conceded that under 18 U.S.C. Section 3231, Congress vested district courts

of the United States with jurisdiction to prosecute federal crimes:

> "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States. Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

Title 18 U.S.C. Section 3231.

However, under Title 18 U.S.C. Section 7, special maritime and territorial

jurisdiction of the United States is defined:

> "The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:

> (1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

> (2) Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.

> (3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building...

Title 18 U.S.C. Section 7.

Also, 18 U.S.C. Section 13 defines "Laws of States adopted for areas within Federal Jurisdiction":

(a) Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title [18 USCS Section 7], or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

Title 18 U.S.C. Section 13.

When reading these statutes and rules along with the Constitution and case history, the continued statement of limitation on the jurisdiction of the Federal Government, Federal Courts & Federal Codes and Rules that they must operate outside the jurisdiction of any particular State, sends a clear message that State's boundaries are the end all and be all of federal criminal jurisdiction. Thus, jurisdiction of the U.S. District Courts are limited and cannot be extended by consent or waiver. _A.L. Rowan & Son, General Contractors, Inc. v. Department of Housing and Urban Development_, 611 F.2d 997 (C.A. 5 (LA) 1980).

In the case at bar, at no time before, during or after the criminal proceedings, did the Federal Government prove territorial jurisdiction, establish ownership of the property upon which the crimes alleged occurred, produce any documentation that

the State of Pennsylvania had ceded jurisdiction to that land or property, or documentation that consent to accept jurisdiction over acquired land or property upon which the crimes alleged occurred have been published and filed on behalf of the United States as provided and filed in 40 U.S.C. Section 255. The statute nor the indictment claims any specific locus of the alleged crime.

The general attempt at jurisdiction by stating that the alleged federal offense was committed within the District of the Court is not enough to confer jurisdiction when the court is acting as a Court of Law (not equity). The indictment never alleged that defendant was within the territorial jurisdiction of the United States, nor was it proven at trial. The evidence submitted only alleged unspecific times and an alleged place within the State of Pennsylvania, City of Erie. Surely, this cannot be considered government land, the high seas, any other waters within the admiralty and maritime jurisdiction of the United States, or outside the jurisdiction of the State of Pennsylvania.

Accordingly, the district court operating as a Court of Law (not equity) lacks jurisdiction in this matter. Congress understood that it could not make these rules and codes apply to acts within a state, therefore, they applied them to the areas where they have exclusive legislative power. This is Judicial Knowledge and the District Court should have taken Judicial Notice, sua sponte. The Federal Government does not have

the power to punish persons for various other crimes over which jurisdiction is retained by the States. Preventing and prosecuting such various crimes is much more the business of the States than the Federal Government. *Arizona v. Many Penny*, 451 U.S. 232, 101 S.Ct. 1657.

Neither does 18 U.S.C. Section 3231 provide the Federal Government jurisdiction to prosecute crimes within the boundaries of the State of Pennsylvania. The power of the United States to criminally prosecute is "strictly confined" to offenses committed within "its jurisdiction" as defined by the U.S. Constitution - Article 1, Section 8, Clause 17. This is born out simply by examination of Title 18 U.S.C. Section 5, which defines the term "United States" in clear jurisdictional terms. Title 18 U.S.C. Section 7 contains the fullest statutory definition of the "jurisdiction of the United States", including a word for word citation of Article 1, Section 8, Clause 17, which only gives the Federal Government jurisdiction on acquired or purchased land, that has been ceded or purchased from the several States for the purposes of the "Erection of Forts, Magazines, Arsenals, dock-yards and other needful Buildings".

To attempt to thwart this constitutional mandate, United States prosecutors invokes the jurisdictional clause of 18 U.S.C. Section 3231. However, Section 3231 cannot provide jurisdiction to the Federal Government in conflict with and not given by the U.S. Constitution.This statute appears to be purposely construed in such

ambiguous fashion as to thwart jurisdictional challenges. Nonetheless, even this statute includes the "mandate" that "Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." 18 U.S.C. Section 3231.

Thus, to bring Cooley's alleged offense within the jurisdiction of the Federal Courts, it must have been committed out of the jurisdiction of any State and within the exclusive jurisdiction of the Federal Government as defined in Article 1, Section 8, Clause 17 of the U.S. Constitution, and not as stated in Title 18 U.S.C. Section 3231. Hence, without proper jurisdiction of the subject matter, any prosecution or continuation of this matter is unlawful at its inception and duration, and the indictment in this case must therefore be necessarily quashed and dismissed for want of territorial jurisdiction.

38

## CONCLUSION

Under 28 U.S.C. Section 2255, a prisoner has the right to be released upon the ground that the sentence was imposed in violation of the U.S. Constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. _Morelli v. United States_, 285 F.Supp. 2d 454 (3d Cir. 2003).

Here, it has been clearly shown that Cooley's sentence was imposed in violation of the Constitution or laws of the United States, and that the court was without jurisdiction to impose such sentence, and that the sentence was in excess of the maximum authorized by law. Thus, Cooley prays that this Court will grant his 2255 motion and order his release from custody pursuant to law.

Dated: _11-1-07_

Respectfully submitted,

John H. Cooley, Jr.
#20139-068
USP - Hazelton
P.O. Box 2000
Bruceton Mills, WV 26525

39

## AFFIDAVIT OF MAILING/SERVICE

I, John Henry Cooley, the undersigned adult inhabitant of the City of Bruceton Mills, West Virginia, attest under penalty of perjury, that I did personally witness and place into an envelope the below listed documents:

THREE COMPLETED COURT DRAFTED FORMS FOR SECTION 2255 MOTIONS TO CORRECT, SET ASIDE OR VACATE SENTENCE WITH THREE ATTACHED THIRTY-NINE (39) PAGE MEMORANDUMS OF LAW IN SUPPORT OF SECTION 2255 MOTION. THAT IS, THE ENVELOPE THAT I AM MAILING CONTAINS THREE (3) SECTION 2255 MOTIONS AND EACH SECTION 2255 MOTION IS ATTACHED TO A THIRTY-NINE PAGE MEMORANDUM OF LAW.

The mailing envelope was addressed to:

**United States District Court**

**Western District of Pennsylvania**

**17 South Park Row**

**Erie, Pa 16501**

1.  All documents were placed into an envelope which was sealed and presented for delivery by

    U.S.P.S., Certified Mail # _7005 1820 0004 0629 5731._
    Return Receipt Requested

2.  I, John Henry Cooley personally reviewed all documents enclosed for mailing and attest to the enclosing of such in envelope.

EXECUTED BY ME THIS ___1ˢᵗ___ DAY OF ___November___, 2007.

Signed By: _____
                                AFFIANT

John H. Cooley
Reg. No. 20139-068
USP - Hazelton
P.O. Box 2000
Bruceton Mills, WV 26525


November 1, 2007


RE: <u>Filing of § 2255 Motion</u>


Dear Clerk of Court:

    Please find enclosed the original and two (2) copies of my § 2255 Motion with its attached Memorandum of Law to be filed in this Court promptly.

    Thank you for your time and assistance in this matter and I look forward to hearing from your office in the very near future.


RESPECTFULLY,


JOHN H. COOLEY, JR.