IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
Erie Division

UNITED STATES OF AMERICA,



**FILED**

v.

FEB 15 2008

Criminal No. 02-40 Erie
Civil No. 07-308 Erie

CLERK U.S. DISTRICT COURT
EST. DIST. OF PENNSYLVAN

JOHN H. COOLEY, JR.,

## MOVANT'S REPLY TO GOVERNMENT'S RESPONSE TO HIS § 2255 MOTION

NOW COMES, your Movant, John H. Cooley, Jr., in reply to the government's response to his § 2255 Motion, and in further support of his Memorandum of Law, Cooley states as follows;

1.      The government contends in its response to Cooley's § 2255 motion that (1) Cooley is relitigating his *Apprendi-Vazquez* error, which was raised on direct appeal, under the umbrella of ineffective assistance of counsel, and (2) there was no *Apprendi-Vazquez* error because, unlike *Vazquez*, the quantity (50 grams or more) of crack cocaine was submitted to the jury and Cooley's life sentence was therefore not beyond the statutory maximum prescribed under § 841(b), thus trial counsel was not ineffective for failing to challenge Cooley's sentence on those grounds.

2.      The government's preceding contentions are legally flawed, erroneous and misses the entire point of Cooley's ineffective assistance of counsel claim.

I.      **Relitigating *Apprendi-Vazquez* Error Raised on Appeal (Government's Response - Section 1, at pgs. 5-8)**

3.      The government's contention that Cooley's ineffective assistance claim regarding the *Apprendi-Vazquez* error is simply a "relitigation" of the same error raised on appeal is at best a non-sensical effort to overlook the obvious. As already stated in Cooley's § 2255 Memorandum of Law, appellate counsel raised the *Apprendi-Vazquez* error on appeal, however, the Third Circuit did not address this error because it was deemed waived by trial counsel's failure to preserve the issue at trial or at sentencing. **(See Memorandum of Law at pg. 17).** This procedural bar of the *Apprendi-Vazquez* error on appeal, caused by counsel's failure to properly preserve the *Apprendi-Vazquez* error, only speaks further to the merits of Cooley's ineffective assistance claim.

4.      Moreover, it is painfully illogical to characterize a clear ineffective assistance of counsel claim as a "relitigation" of an *Apprendi-Vazquez* error simply because counsel's prejudicial omission is the failure to raise such an error at the proper time. Cooley's ineffective assistance claim is not about the *Apprendi-Vazquez* error - its about *counsel's error.*

2

5.    Although, in order to determine whether counsel's omission constitutes the denial of the effective assistance of counsel, the court will have to determine if an *Apprendi-Vazquez* error occurred, Cooley's ineffective assistance of counsel claim is clearly just that - an ineffective assistance of counsel claim. And as oddly pointed out in the government's response, given the government's assertion that Cooley's ineffective assistance claim is otherwise, such claim is reviewed under the standard for ineffective assistance of counsel as espoused in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

6.    Without further comment, as a matter of common-sense, it is clear that Cooley's ineffective assistance claim is not a "relitigation" of the *Apprendi-Vazquez* error raised on his appeal but rather a genuine ineffective assistance of counsel claim focusing on *counsel's error* as it relates to an *Apprendi-Vazquez* error. For this cause, the government's contention to the contrary must fail.

**II.    No Apprendi-Vazquez error because, unlike *Vazquez*, the quantity (50 grams or more) of crack cocaine was submitted to the jury and Cooley's life sentence was therefore not beyond the statutory maximum prescribed under § 841 (b), thus trial counsel was not ineffective for failing to challenge Cooley's sentence on those grounds. (Government's Response at Section 2, pgs. 8-16).**

7.    Essentially, the government contends that because there was no *Apprendi-Vazquez* error, there can be no ineffective assistance of counsel for failing to challenge a non-existent *Apprendi-Vazquez* error.

3

8.    The thrust of the government's contention is in its erroneous conclusion that the relevant facts in *United States v. Vazquez*, 271 F.3d 93, 107 (3d Cir. 2001) is somehow dissimilar to the relevant facts in Cooley's case. The government contends that in Cooley's case the quantity of crack cocaine involved in the conspiracy, as charged in Cooley's indictment, was submitted to the jury, but not so in Vazquez's case - thus, according to the government, *Vazquez* does not apply to Cooley's case. **(See Government's Response at pg. 12).** The government's contention is both *misleading* and *wrong*.

9.    Like Vazquez, Cooley was indicted and tried for conspiracy to possess and distribute the drug quantity of cocaine, as stated in the indictment, in violation of 21 U.S.C. §§ 846 and 841. For Vazquez, the drug quantity stated in the indictment was more than 5 kilograms of cocaine. For Cooley, the drug quantity stated in the indictment was 50 grams or more. Like Vazquez, the jury found Cooley guilty of conspiracy to possess and distribute the drug quantity of cocaine as stated in the indictment. See *Vazquez*, 271 F.3d at 98.

10.    Like in Vazquez's case, though the drug quantities are different and immaterial, in Cooley's case, though the jury found him guilty of conspiracy to possess and distribute the drug quantity (50 grams or more) stated in the indictment, the judge's additional finding of drug quantity (35 to 40 kilograms), which increased

4

Cooley's guideline range and resulted in the imposition of a sentence beyond the sentence that would have been authorized by the drug quantity found by the jury, was neither submitted to the jury nor reflected in its verdict. These factual similarities in both Vazquez's and Cooley's cases are the facts that triggered the *Apprendi* violation in both cases.

11.    In Cooley's case, the district court determined that the base offense level for him was 38 based upon a total of 1.5 kilograms of crack cocaine. See U.S.S.G § 2D1.1(c)(1). Notably, the jury was not asked whether the offense of conviction involved that quantity. Rather, the jury determined that Cooley was responsible for more than 50 grams of crack cocaine, which was the highest quantity option presented to the jury. The jury's verdict established a base offense level of 32, which when coupled with Cooley's criminal history category, generated a guideline range of imprisonment of 135-168 months.

12.    However, as stated earlier, the district court determined that the base offense level for Cooley was 38 based upon a total of 1.5 kilograms of crack cocaine, then added 8 levels to Cooley's offense level based on the district judge's finding that Cooley (1) possessed a firearm during the conspiracy, (2) was the leader or organizer of the conspiracy, and (3) obstructed justice. Accordingly, Cooley's adjusted offense level was 46. Based upon judicial fact-finding, the resulting guidelines sentencing

5

range for Cooley was a mandatory life sentence without the possibility of parole.

13.    In light of the Supreme Court's decision in *Apprendi* and the Third

Circuit's holding in *Vazquez,* there is no doubt that the district court erred (and that

the error is clear) by increasing Cooley's sentence, under the *then-mandatory*

*guidelines scheme,* based on solely judge-found facts relating to both drug quantity

and enhancements. It is of no matter, as the government contends, that the statute

permits a life sentence for a conviction under § 841 (b)(1)(A). Cooley was sentenced

under the *then mandatory guideline scheme,* which dictates the *prescribed maximum*

*sentence* he could receive and the district court clearly increased his guideline

sentence well beyond what the jury verdict authorized. The Third Circuit admitted as

much when it decided to remand Cooley's case for resentencing and ruled that

Cooley's life sentence was "a sentence beyond the maximum for the crime of

conviction". See, e.g., *Cooley,* 131 Fed. Appx. at 883.

14.    In *United States v. Guevara,* 277 F.3d 111 (2d Cir. 2001), the defendant

was sentenced, based on an indeterminate quantity of drugs, pursuant to § 841(b)(1)

(A). The sentence fell within the  § 841(b)(1)(C) range but exceeded the otherwise

applicable Guidelines range. The Court vacated the sentence, holding that because

the federal Sentencing Guidelines are an "overlay of binding law that limits

discretion" of district court judges, the Guidelines range is the "*prescribed maximum*

6

*sentence to which the defendant may be exposed and sentenced.*" *Guevara*, 277 F.3d at 118-19. Therefore, if the applicability of a mandatory sentence under subsection (A) or (B) depends on a finding of drug quantity not made by a jury, such a sentence cannot be imposed if it would "exceed the highest sentence to which the defendant would have otherwise been exposed (i.e., the top of the federal Guideline range . . .)." *Id.*

15.    In *United States v. McLean*, 2002 U.S. App. LEXIS 5147, No. 00-1342, 2002 WL 483474 (2d Cir. Mar. 28, 2002), defendant was indicted for conspiracy to distribute over 100 kilograms of marijuana. Defendant pled guilty, but contested the amount of drugs with which he was charged. The Court held that where the defendant pleads guilty but admits only the non-quantity elements, and where that plea is accepted, the district court "may not impose a sentence in excess of the maximum prescribed by 21 U.S.C. § 841 (b) for an offense involving an unspecified quantity of the drug." *McLean*, 2002 U.S. App. LEXIS 5147, 2002 WL 483484, at *5.

16.    The idea that *Apprendi* is never implicated if a sentence falls within the maximum sentence prescribed in the applicable penal statute, although found persuasive (or spoken in dicta) by other courts, does not rest on Supreme Court precedent. True, Apprendi held that a fact that increases a penalty beyond the prescribed maximum must be found by a jury beyond a reasonable doubt, but Apprendi also held that "it is unconstitutional for a legislature to remove from the

7

jury the assessment of facts that increase the prescribed range of penalties to which a

criminal defendant is exposed." Apprendi, 530 U.S. at 490. Apprendi validated the

sentencing judge's discretion to consider factors such as drug quantity for purposes

of Guidelines calculations, and at the same time held that a legislature cannot remove

from the jury facts that increase a defendant's sentence beyond the prescribed

maximum. In so doing, Apprendi left room for the conclusion that once the

Guideline range is calculated, facts that increase a defendant's sentence above this

must be found by a jury. As the Sixth Circuit has stated:

> There is a substantial difference in penalty based on drug quantities
> when a statute moves the penalty from a maximum penalty of 20 or
> 30 years or life to a mandatory minimum penalty of the same length
> because a life sentence 'is not mandatory under the latter provision.'
> Ramirez, 242 F.3d at 351 (citing and quoting *United States v. Flowal*,
> 234 F.3d 932, 937 (6th Cir. 2000)).

17.    Such a holding does not invalidate statutory mandatory minimum

sentences based on facts found by the judge under a preponderance standard. In

*McMillan v. Pennsylvania*, 477 U.S. 79, 91 L. Ed. 2d 67, 106 S. Ct. 2411 (1986), which the

*Apprendi* court declined to overrule, the Supreme Court considered a Pennsylvania

statute that subjected a defendant to a mandatory minimum sentence of five years in

prison if a judge found, by a preponderance of the evidence, that the defendant had

visibly possessed a firearm during the commission of the underlying offense. 477 U.S.

at 81. The Court rejected petitioners' claims that the prosecution had to prove to the

jury beyond a reasonable doubt that the defendant visibly possessed a firearm, and

affirmed the holding below finding the statute constitutional. *Id.* at 84-91, 93.

*McMillan* authorizes mandatory minimum sentences, but like *Apprendi, McMillan*

arose under state law, without sentencing guidelines, so that the only range of

penalties to which the defendants were exposed was the range in the penal statute.

Because the mandatory minimum sentence of five years fell within that range, the

defendants' sentences did not exceed the otherwise applicable prescribed range of

penalties; the mandatory minimum "operated solely to limit the sentencing court's

discretion in selecting a penalty within the range already available to it . . ." *McMillan,*

477 U.S. at 87-88.

18.    In Cooley's case, the mandatory minimum term imposed by the district

court exceeded the otherwise applicable range authorized by the jury's verdict. Thus,

to forbid an outcome that  involve the imposition of a sentence more severe than the

prescribed statutory maximum, as authorized by the then mandatory guidelines, for

the offense established by the jury's verdict is consistent with *McMillan.*

19.    The Government contends, however, that there is no *Apprendi* violation

because in Cooley's case the quantity of crack cocaine (50 grams or more *not the judge*

*found 35 to 40 kilograms*) involved in the conspiracy, as charged in Cooley's

9

indictment, was submitted to the jury, and since that did not happen in Vazquez's case, both *Apprendi* and *Vazquez* is inapplicable to Cooley's case. The preceding facts and case-law renders the government's contention, in this regard, nonsensical.

20.    It is indisputable that an *Apprendi* error occurred in Cooley's case. This fact is underscored by the Third Circuit's recognition of an *Apprendi* error in Cooley's case when it remanded for resentencing ruling that Cooley's life sentence was *"a sentence beyond the maximum for the crime of conviction".* See, e.g., *Cooley,* 131 Fed. Appex. at 883. Thus, had counsel, at sentencing,  challenged the obvious *Apprendi* error in Cooley's case, the district court would have been constrained by the 20-year maximum found in § 841(b)(1)(C) and could not have imposed the erroneous life sentence Cooley now suffers under.

21.     In addition to this reply, Cooley reasserts all arguments made in support of his ineffective assistance of counsel claim, illegal sentence claim and jurisdictional claim exhaustively set out in his *Memorandum of Law.* The government's response does not adequately refute the merits of Cooley's § 2255 claims and should therefore be set at nought.

**10**

Date: 2 - 11 - 08

Respectfully submitted,

John H. Cooley, Jr.
#20139-068
USP- Hazelton
P.O. Box 2000
Bruceton Mills, WV 26525

## CERTIFICATE OF SERVICE

The undersigned, hereby certifies that on this 11th day of February 2008, a true copy of the foregoing Reply was mailed, via U.S. Postal Service, to Christian A. Trabold, Assistant U.S. Attorney, Federal Courthouse, Room A330, 17 South Park Row, Erie, Pennsylvania 16501-1158.

The Undersigned:

JOHN H. COOLEY, JR.

11

The case United States v. Vazquez, 271 F.3d 93 (3d Cir. 2001)
is ATTACHED for your convenience.


A T T A C H M E N T

UNITED STATES OF AMERICA v. ALEX <u>VAZQUEZ</u>, Appellant.
UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
271 F.3d 93; 2001 U.S. App. LEXIS 21611
No. 99-3845
October 9, 2001, Filed

**Editorial Information: Subsequent History**

Writ of certiorari denied: <u>Vazquez</u> v. United States, 2002 U.S. LEXIS 5009 (U.S. June 28, 2002).

**Editorial Information: Prior History**

On Appeal from the United States District Court for the Middle District of Pennsylvania. (D.C. Crim. No. 98-00086-01). District Judge: Sylvia H. Rambo.

**Disposition**       Affirmed Vazquez's conviction and sentence.

**Counsel**            Martin C. Carlson, United States Attorney, Christy H. Fawcett, Assistant United States Attorney, Office of United States Attorney, Harrisburg, Pennsylvania. Michael R. Dreeban (argued), Deputy Solicitor General, U.S. Department of Justice, Nina Goodman, Michael A. Rotker, Criminal Division, U.S. Department of Justice, Washington, D.C., Attorneys for Appellee.

Peter Goldberger (argued), Pamela A. Wilk, James H. Feldman, Jr., Ardmore, Pennsylvania, Attorneys for Appellant.

Shelley Stark, Federal Public Defender, Lisa B. Freeland (argued), Assistant Federal Public Defender, Pittsburgh, Pennsylvania, Attorneys for Amicus Curiae Leroy Campbell.

Lisa Kemler, Alexandria, Virginia, Attorney for Amicus Curiae National Association of Criminal Defense Lawyers.

Mary Price, General Counsel, Washington, D.C., Attorney for Amicus Curiae Families Against Mandatory Minimums Foundation.

Clayton A. Sweeney, Jr., Philadelphia, Pennsylvania, Attorney for Amici Curiae National Association of Criminal Defense Lawyers, Pennsylvania Association of Criminal Defense Lawyers and Families Against Mandatory Minimums Foundation.

**Judges:** Before: BECKER, Chief Judge, SLOVITER, MANSMANN, SCIRICA, NYGAARD, ALITO, ROTH, McKEE, RENDELL, BARRY, AMBRO, FUENTES, and GARTH, Circuit Judges. BECKER, Chief Judge, concurring, with whom Judge Ambro joins. SLOVITER, Circuit Judge, dissenting, with whom Judges Mansmann, Nygaard, and McKee join, and with whom Judges Roth and Rendell join as to Part I. RENDELL, Circuit Judge, dissenting.

**Opinion**

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Opinion by:**          FUENTES

**{271 F.3d 96}**

OPINION OF THE COURT

FUENTES, Circuit Judge:

This appeal requires us to apply the Supreme Court's recent decision in Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), to a drug conspiracy sentence. At sentencing, the trial court, adhering to established law and custom, itself decided the issue of drug quantity under a preponderance of the evidence standard. Based largely on this finding, the court sentenced appellant, Alex **Vazquez**, to a prison term of 292 months (24 years and 4 months), which exceeded, by over 4 years, the statutory maximum authorized by the jury's factual findings. Subsequently, the Supreme Court held in Apprendi that a criminal defendant's constitutional rights are violated when his prescribed statutory maximum penalties are increased by any fact, other than a prior conviction, that a jury does not find beyond a reasonable doubt. Id. at 490. **Vazquez** now challenges his sentence contending that, because the court did not submit the issue of drug quantity to the jury for determination, he must be resentenced in accordance with the default 20-year statutory maximum sentence that applies to cocaine offenses of unspecified drug quantity.

**Vazquez** did not contest the drug quantity evidence at any stage of the proceedings. As a result, our review is for plain error. We conclude that Vazquez's sentence violated Apprendi, and therefore, the failure to submit drug quantity to the jury, and the imposition of a prison term in excess of 20 years, was erroneous. Nonetheless, because we remain confident that a rational jury would have found, beyond a reasonable doubt, the drug quantities that the judge found, we conclude that **Vazquez** is not entitled to plain error relief and we will therefore affirm his sentence. 1

I.

The relevant facts are largely undisputed. On February 27, 1998, after a lengthy investigation, law enforcement authorities seized a quantity of powder cocaine and crack cocaine from a rooming house in Columbia, Pennsylvania. Vazquez's fingerprint was on one of the bags in which the cocaine had been stored.

The next day, officers executed a search warrant at Vazquez's residence. There, police seized a digital scale from Vazquez's bedroom, a key to the front door of the rooming house, and a stolen firearm. Thereafter, state law enforcement authorities and agents from the Federal Bureau of Investigation ("FBI") interviewed a number of Vazquez's drug customers, including James Freeland, Brian Holmes, and Wayne Rice. All three gave statements implicating **Vazquez** and Francisco Algarin in a drug dealing operation. Algarin was identified as a "runner" for the organization.

On June 9, 1998, a grand jury for the Middle District of Pennsylvania issued an indictment charging **Vazquez** with conspiracy to possess and distribute "more than 5 kilos of cocaine" in violation of 21 U.S.C. §§ 846 and 841, several related counts of obstruction of justice (including one under 18 U.S.C. § 1503), and two counts of witness tampering. The indictment specifically charged a drug conspiracy involving **{271 F.3d 97}** "cocaine." Although it did not reference cocaine base or crack cocaine, it listed the following overt act: "storing approximately 859 grams of 'crack' cocaine (cocaine base) and approximately 992 grams of cocaine powder in Room # 2, 647 Union Street, Columbia, PA."

The trial evidence, which included testimony based on a forensic lab analysis, established that police seized 991 grams of powder cocaine and 859 grams of crack cocaine from the Columbia rooming house.2 According to the testimony, **Vazquez** had given the drugs to his co-conspirator, Algarin, for storage at the rooming house, and Vazquez's fingerprint was found on one of the bags in which the cocaine was stored. Also, a key to the front door of the rooming house was found on Vazquez's

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

person. **Vazquez** raised no objection to the testimony respecting drug quantity, and he presented no affirmative evidence at any time challenging the Government's evidence of drug quantity. Additionally, neither the Government nor **Vazquez** requested an instruction requiring the jury to find the quantity of drugs involved in his conspiracy offense, and the court gave no such instruction. The District Court's instructions concerning the drug conspiracy only required the jury to find that **Vazquez** conspired "to possess and distribute cocaine." Following deliberations, the jury convicted **Vazquez** of conspiracy to possess and distribute cocaine, as well as obstruction of justice. However, the jury acquitted **Vazquez** of a conspiracy to obstruct justice charge. In addition, the jury was unable to reach verdicts on the two witness tampering counts; the District Court declared a hung jury as to those counts.

At the sentencing hearing, the District Court adopted the factual findings and sentencing recommendations in the presentence report. The court determined, without objection and under a preponderance of the evidence standard, that, based on the trial evidence and the presentence report, **Vazquez** had been involved with 992 grams of powder cocaine and 859 grams of crack cocaine. The court therefore assigned **Vazquez** a base offense level of 36 in accordance with U.S.S.G. § 2D1.1 's Drug Quantity Table. The District Court then applied two separate 2-level upward adjustments, the first for being an organizer/leader under U.S.S.G. § 3B1.1(c) , and the second for attempted obstruction of justice under U.S.S.G. § 3C1.1 . An adjusted offense level of 40 and a criminal history category of I resulted in a sentencing range of 292 to 365 months. The District Court ultimately sentenced **Vazquez** at the bottom of that range, the guideline minimum of 292 months, for the drug conspiracy, and to a concurrent term of 120 months for the obstruction of justice charge. The court also imposed a 5-year supervised release term on the drug conspiracy count and a concurrent 3-year supervised release term on the obstruction of justice charge. With regard to the drug conspiracy, the judgment of conviction stated that **Vazquez** was sentenced for a conspiracy in violation of 21 U.S.C. § 846, with the object of distributing more than 5 kilograms of cocaine in violation of 21 U.S.C. § 841 (b)(1)(A).3

**{271 F.3d 98}** II.

We begin by explaining why Apprendi was violated in Vazquez's case. Thereafter, because **Vazquez** did not contest the evidence of drug quantity before the District Court, we will analyze the parties' contentions under the plain error standard.

A.

**Vazquez** was indicted and tried for conspiracy to possess and distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841. To explain the relationship between Apprendi and § 841, we will briefly review the Apprendi decision, and we will then detail how Apprendi was violated in this case.

In Apprendi, the defendant had fired several shots into the home of an African-American family that had recently moved into a New Jersey neighborhood. 530 U.S. at 469. After his arrest, he reportedly stated that he did not know the occupants personally but did not want African-Americans in his neighborhood. Id. at 469. He later, however, denied making such a statement. Id. at 469, 471. He pled guilty in state court to two counts of second-degree possession of a firearm for an unlawful purpose, each of which carried a sentencing range of 5 to 10 years. Id. at 469-70. Subsequently, the prosecutor filed a motion to enhance the defendant's sentence pursuant to New Jersey's hate crime statute, which authorized an increased punishment for first-degree offenses based upon a trial judge's finding, by a preponderance of the evidence, that the defendant had committed the crime with a purpose to intimidate a person or group because of race. Id. at 470, 491-92 (discussing N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 2000)). After a contested evidentiary hearing, the trial court found, by a preponderance of the evidence, that the shooting was racially motivated and imposed a 12-year sentence on one of the second-degree counts. Id. at 471.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*McGuirk v. Stenbury, 58 F. Supp. 2d 1051 (8th Dist.*

*U.S. v. Johns, 336 F. Supp. 2d 411 (3rd Dist. 2004)*

The Supreme Court granted certiorari and reversed, holding that the New Jersey sentencing procedures violated the Due Process Clause of the Fourteenth Amendment. In doing so, the Court articulated a new rule of constitutional law: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490 (emphasis added). Further, with the exception for prior convictions, the Court endorsed the following concept: " 'It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' " Id. (quoting Jones v. United States, 526 U.S. 227, 252-53, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999) (Stevens, J., concurring)).

In Vazquez's case, drug quantity was neither submitted to the jury nor reflected in its verdict. Therefore, § 841(b)(1)(C) defines Vazquez's prescribed statutory maximum sentence as 20 years. We indicated in United States v. Williams, 235 F.3d 858 (3d Cir. 2000), cert. denied, 2001 U.S. LEXIS 5558, 70 U.S.L.W. 3234 (U.S. 2001), and we hold here, that an Apprendi violation only occurs if the drug quantity is not found by a jury beyond a reasonable doubt and the defendant's sentence under § 841 exceeds 20 years.

In this case, the District Court sentenced **Vazquez** to more than 24 years' imprisonment, specifically 292 months. {271 F.3d 99} The court increased Vazquez's penalty based on its finding, by a preponderance of the evidence, that he had been involved with 992 grams of powder cocaine and 859 grams of crack cocaine. This nearly 2-kilogram quantity led to Vazquez's sentencing guideline range of 292 to 365 months, which ultimately resulted in his 292-month sentence. The Apprendi violation occurred when the judge, rather than the jury, determined drug quantity and then sentenced **Vazquez** to a more than 24-year sentence, a term in excess of his prescribed 20-year statutory maximum under § 841(b)(1)(C). Our sister courts of appeals have similarly applied Apprendi to § 841. E.g., United States v. Hishaw, 235 F.3d 565, 574-75 (10th Cir. 2000), cert. denied, 150 L. Ed. 2d 241, 121 S. Ct. 2254 (2001); United States v. Doggett, 230 F.3d 160, 164 (5th Cir. 2000), cert. denied, 148 L. Ed. 2d 1014, 121 S. Ct. 1152 (2001); United States v. Rogers, 228 F.3d 1318, 1327 (11th Cir. 2000); see also United States v. Rebmann, 226 F.3d 521, 524-25 (6th Cir. 2000); United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000).

B.

We now turn to the consequences of the Apprendi violation. Vazquez's strongest argument is that his jury did not make a finding beyond a reasonable doubt as to drug quantity, and thus, he must be resentenced in accordance with § 841(b)(1)(C)'s 20-year maximum term. According to **Vazquez**, the District Court committed reversible error when it imposed a more than 24-year prison term based on its own drug quantity finding, which was conducted under the less demanding preponderance of the evidence standard. As we stated previously, **Vazquez** neither challenged the evidence of drug quantity nor objected to the court's failure to submit the issue to the jury. Moreover, he never argued that the sentencing court was constrained by the 20-year maximum found in § 841(b). Consequently, the plain error standard governs Vazquez's request for relief. See Fed. R. Crim. P. 52(b) ; Johnson v. United States, 520 U.S. 461, 465-66, 137 L. Ed. 2d 718, 117 S. Ct. 1544 (1997). Under that standard, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson, 520 U.S. at 466-67 (internal quotations and citations omitted); accord United States v. Olano, 507 U.S. 725, 732-36, 123 L. Ed. 2d 508, 113 S. Ct. 1770 (1993).

1.

The trial court committed error in Vazquez's case. As we explained above, the District Court violated

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

* Prejudice presumed (ineffective assistance) —
McGuirk v. Stenbury, 163 F.3d 470 (8th Cir. 1998)

Apprendi when it increased Vazquez's sentence beyond the prescribed statutory maximum, based on its own factual finding concerning drug quantity, instead of submitting the issue to the jury for its determination. Further, Apprendi applies retroactively because Vazquez's direct appeal was pending at the time Apprendi was decided. See Griffith v. Kentucky, 479 U.S. 314, 328, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987) ("new rules for the conduct of criminal prosecutions [are] to be applied retroactively to all cases . . . pending on direct review . . ., with no exception for cases in which the new rule constitutes a 'clear break' with the past"); see also Johnson, 520 U.S. at 467.

2.

As even the Government concedes, the Apprendi violation that occurred {271 F.3d 100} in Vazquez's case was plain. This second factor of the plain error standard is met if the error is "obvious" or "clear under current law." Olano, 507 U.S. at 734. Clearly, had the Government tried Vazquez's case post-Apprendi, it would have been constitutional error for the District Court to impose a sentence exceeding the 20-year maximum in § 841(b)(1)(C) based on the court's finding, by a preponderance of the evidence, as to drug quantity. Thus, the Apprendi violation is plain even though the District Court conducted Vazquez's proceedings correctly under the then applicable law. See Johnson, 520 U.S. at 468 ("in a case such as this -- where the law at the time of trial was settled and clearly contrary to the law at the time of appeal," this second factor is satisfied if the error is obvious "by the time of appellate consideration").

3.

**Vazquez** must next satisfy the third plain error factor, which asks whether his substantial rights were affected. Before resolving this issue, we will address several preliminary matters raised in the parties' arguments because our resolution of those matters will significantly affect how we conduct the substantial rights inquiry. First, we will consider whether an Apprendi violation should be deemed a sentencing error (as opposed to a trial error), or a combination of a trial and sentencing error. We conclude that the latter approach is more consonant with the realities of Apprendi violations, as well as Supreme Court precedent. Second, we will consider whether an Apprendi violation is per se prejudicial because it constitutes a structural defect in the proceedings. If so, our plain error analysis would come to an end, and we would be compelled to grant **Vazquez** relief. We conclude that Apprendi violations do not constitute structural defects. Third, we will proceed to consider whether the Apprendi violation that occurred in Vazquez's case affected his substantial rights. We conclude that Vazquez's substantial rights were not affected. Fourth, we also hold that, even if Vazquez's substantial rights were affected, we decline to exercise our discretion to notice the Apprendi violation under the final plain error factor because the drug quantity evidence was overwhelming. Therefore, **Vazquez** is not entitled to plain error relief even though an Apprendi violation occurred during his criminal proceedings.

Parenthetically, in addressing the substantial rights inquiry, we will rely on precedent applying Fed. R. Crim. P. 52(a) 's harmless error standard, as well as Fed. R. Crim. P. 52(b) 's plain error standard, each of which provides relief only if substantial rights are affected.4 The substantial rights inquiry under each provision is essentially identical, with the exception of the burden of proof. See Olano, 507 U.S. at 734-35 (clarifying that Government has burden of proof under harmless error standard, while defendant has burden under plain error standard); Nordby, 225 F.3d at 1060. Thus, we may properly rely upon both harmless and plain error precedent in deciding whether **Vazquez** has shown that the Apprendi violation affected his substantial rights. In this case, **Vazquez** has not carried his burden of proof.

**{271 F.3d 101}** (a)

The parties dispute the nature of Apprendi violations. **Vazquez** claims that the Apprendi violation that adversely affects the defendant's rights in most drug cases, including this one, is the sentencing

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

decision, not any trial error. According to **Vazquez**, a properly conceived substantial rights inquiry, in the context of an Apprendi violation, requires an appellate court to ask whether it can say, beyond a reasonable doubt, that the sentence would have been the same absent the sentencing error, which occurred when a sentence was imposed in excess of the prescribed statutory maximum. See Nordby, 225 F.3d at 1060. Under Vazquez's approach, every Apprendi violation with respect to drug quantity in a cocaine case will automatically result in a resentencing in accordance with the 20-year maximum sentence under § 841(b)(1)(C), regardless of how conclusive the evidence is with regard to drug quantity.

The Government advocates a different approach, urging us to recognize that an Apprendi violation involves not just a sentencing error but also a trial error. This approach emphasizes that, due to the Apprendi violation, drug quantity becomes an element of the offense which a jury has not determined beyond a reasonable doubt. See Apprendi, 530 U.S. at 494 n.19; Nordby, 225 F.3d at 1060. When we conduct plain error review under this paradigm, the substantial rights inquiry turns on whether we can say beyond a reasonable doubt that the sentence would have been the same absent the trial error, which occurred when drug quantity was not submitted for a jury determination. See Neder v. United States, 527 U.S. 1, 18, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999) (in case of trial error resulting from failure to submit element to jury, substantial rights inquiry asks whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error"); Sochor v. Florida, 504 U.S. 527, 540, 119 L. Ed. 2d 326, 112 S. Ct. 2114 (1992) (harmless error asks whether error " 'did not contribute to the sentence obtained'") (quoting Chapman v. California, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967)). Thus, under the Government's approach, the remedy for an Apprendi violation will depend upon the entire record, and no remedy may be available if the court determines that the evidence is sufficiently conclusive to support the sentence actually imposed. However, substantial rights will be affected if, for example, "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." Neder, 527 U.S. at 19.

We are persuaded that the Government's approach must prevail for two reasons. First, the Government's position better reflects the realities concerning the nature of Apprendi violations. In Apprendi, the Supreme Court recognized a new constitutional right grounded in the Due Process Clause and the Sixth Amendment's notice and jury trial guarantees. See 530 U.S. at 476. Consistent with the Supreme Court's pronouncement of this new constitutional right, in an Apprendi violation, the sentencing error (imposing a sentence beyond the prescribed statutory maximum) is inextricably intertwined with a trial error (failing to submit an element of the offense to the jury). On the one hand, the trial error exists only because of the sentencing error. On the other hand, the sentencing error cannot occur without the trial error. Thus, an appropriate remedy must recognize that each Apprendi violation is both a trial and a sentencing error. But see United States v. Promise, 255 F.3d 150, 2001 WL 732389, at *5 (4th Cir. 2001) (en banc) (concluding that Apprendi **{271 F.3d 102}** violation results from error at sentencing and not in defendant's conviction). As a result, we properly consider the trial record on plain error review. Indeed, as the Supreme Court has stated: "Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record." United States v. Young, 470 U.S. 1, 16, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985). Our holding is consistent with decisions from the First,[5] Fifth,[6] Seventh,[7] Eighth,[8] Tenth,[9] Eleventh,[10] and District of Columbia[11] Circuits, which, in reviewing Apprendi violations, have considered the trial evidence in determining whether substantial rights were affected.

Second, we find the Government's approach is more consonant with Supreme Court precedent. In both Neder and Johnson, the Supreme Court confronted a failure to submit an element of the offense to the jury. The omitted element in each case was the materiality of a falsehood; a tax fraud in Neder and a perjury in Johnson. See 527 U.S. at 6-7; 520 U.S. at 463-65. The Court in Neder and Johnson agreed that the error was of a constitutional dimension. See 527 U.S. at 12; 520 U.S. at 465 (citing United States v. Gaudin, 515 U.S. 506, 132 L. Ed. 2d 444, 115 S. Ct. 2310 (1995)). Further, each decision addressed whether substantial rights were affected; the Neder Court applied harmless error

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

review, while the Johnson Court applied plain error review. See 527 U.S. at 7-10; 520 U.S. at 466-67. The trial error presented here is comparable to the errors in both Neder and Johnson because in those cases the trial error resulted in a constitutional defect, necessitating an inquiry as to whether the defendant's substantial rights were affected. Thus, Neder and Johnson apply because we are presented with the same substantive issue, namely, the consequence of failing to submit to the jury an element of an offense.

(b)

Next, **Vazquez** argues that the Apprendi violation constitutes a structural {271 F.3d 103} defect in the proceedings. This issue is properly considered at this juncture during the course of our substantial rights inquiry. See Johnson, 520 U.S. at 466 (no structural defect exception to Fed. R. Crim. P. 52(b) ); id. at 468 (structural defect inquiry is relevant to substantial rights inquiry). Structural defects are "defects in the constitution of the trial mechanism" that affect "the framework within which the trial proceeds," with such a resulting impairment in the trial's function of determining guilt or innocence that " 'no criminal punishment may be regarded as fundamentally fair.' "12 Arizona v. Fulminante, 499 U.S. 279, 309-10, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991) (opinion of Rehnquist, C.J.) (quoting Rose v. Clark, 478 U.S. 570, 577-78, 92 L. Ed. 2d 460, 106 S. Ct. 3101 (1986)). Structural defects lead to automatic reversals because they are per se prejudicial. See 499 U.S. at 307-10 (opinion of Rehnquist, C.J.). We reject Vazquez's contention that Apprendi violations constitute structural defects. As we have already explained, Apprendi violations result in both trial and sentencing errors, albeit ones that rise to a constitutional dimension. However, the Supreme Court has instructed that "most constitutional errors can be harmless," and that guidance applies here. Fulminante, 499 U.S. at 306 (opinion of Rehnquist, C.J.); see also West v. Vaughn, 204 F.3d 53, 60 n.7 (3d Cir. 2000), abrogated sub nom. on other grounds by Tyler v. Cain, 150 L. Ed. 2d 632, 121 S. Ct. 2478 (2001). Trial errors resulting from a failure to submit an element of an offense to the jury are not structural defects, but instead, are subject to harmless or plain error analysis. That is, "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder, 527 U.S. at 9. Similarly, sentencing errors can also be harmless. See, e.g., Jones v. United States, 527 U.S. 373, 402-05, 144 L. Ed. 2d 370, 119 S. Ct. 2090 (1999) (applying harmless error review to federal death sentence); United States v. Stevens, 223 F.3d 239, 242-46 (3d Cir. 2000) (applying plain error review to sentencing judge's failure to assure that defendant had read and discussed presentence investigation report with his attorney), cert. denied, 148 L. Ed. 2d 1018, 121 S. Ct. 1157 (2001). Thus, we hold that an Apprendi violation is not a structural defect. As far as we are aware, our holding is in accord with every court of appeals decision that has addressed this issue. See, e.g., United States v. Smith, 240 F.3d 927, 930 & n.5 (11th Cir. 2001) (per curiam); United States v. Westmoreland, 240 F.3d 618, 634 (7th Cir. 2001); Anderson, 236 F.3d at 429.

(c)

Having concluded that the Neder and Johnson frameworks apply to this case, and that Apprendi violations do not constitute structural defects, we address whether {271 F.3d 104} Vazquez's substantial rights were affected. During the course of this appeal, **Vazquez** has raised substantial rights arguments with regard to both his sentence and conviction. We will address each in turn.

We assess Vazquez's challenge to his sentence by determining whether it would have been the same absent the failure to submit drug quantity for a jury determination. We are confident that Vazquez's sentence would have been the same had the jury made the drug quantity finding. In his case, the evidence established beyond a reasonable doubt that **Vazquez** had been involved with 992 grams of powder cocaine and 859 grams of crack cocaine. Indeed, the sentencing judge, explaining that Vazquez's sentence was driven by the quantity of drugs involved, stated that "the lab report which was admitted into evidence in this case substantiates the amount, and there has never been any question about the amount."

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In these circumstances, we can say without a doubt that **Vazquez** conspired to possess and/or distribute the 992 grams of powder cocaine and 859 grams of crack cocaine the authorities found at the Columbia rooming house. Solely on the basis of the uncontested 992 grams of powder cocaine, **Vazquez** would have faced a statutory sentencing range of between 5 to 40 years. See 21 U.S.C. § 841 (b)(1)(B)(ii)(II). Thus, the slightly more than 24-year sentence imposed here fell within the statutory limits applicable to a cocaine-only conspiracy given the drug amount established at trial. Cf. Edwards v. United States, 523 U.S. 511, 515, 140 L. Ed. 2d 703, 118 S. Ct. 1475 (1998) (rejecting statutory and constitutional challenges to sentences because imposed incarceration terms "were within the statutory limits applicable to a cocaine-only conspiracy, given the quantities of that drug attributed to each petitioner").

Further, Vazquez's sentence would not have changed because the court would have considered the 859 grams of crack cocaine for sentencing guideline purposes under the Guidelines' relevant conduct provisions. See U.S.S.G. § 1B1.3 (1998); Edwards, 523 U.S. at 514; Williams, 235 F.3d at 864. This fact would have led to the same guideline sentencing range of 292 to 365 months that the court actually applied to **Vazquez**. No Apprendi problem would then exist because the resulting 292-month sentence would be less than the 40-year statutory maximum sentence under § 841(b)(1)(B)(ii)(II) to which **Vazquez** was exposed solely for his conspiracy offense involving 992 grams of powder cocaine.

Vazquez's failure to dispute the amount of cocaine at trial or sentencing supports our conclusion that he cannot show an effect on his substantial rights. Indeed, he presented no challenge to, or affirmative evidence against, the Government's evidence of drug quantity. As a result, the sentencing judge stated that "there has never been any question about the [drug] amount." In a comparable situation, the Supreme Court observed:

Where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. We think it beyond cavil here that the error "did not contribute to the verdict obtained."

　Neder, 527 U.S. at 17 (quoting Chapman, 386 U.S. at 24).

In addition to attacking his sentence, **Vazquez** relies upon Apprendi to {271 F.3d 105} challenge his conviction. **Vazquez** contends that his substantial rights were affected because, had the trial judge properly submitted drug quantity to the jury, he necessarily would have been acquitted because the evidence the Government presented at trial -- 992 grams of powder cocaine and 859 grams of crack cocaine -- did not support a more than 5-kilogram cocaine conspiracy, as alleged in the indictment. **Vazquez** also contends that his sentence cannot be upheld based upon the 992 grams of powder cocaine because doing so would create a material variance from the more than 5-kilogram drug quantity alleged in the indictment. See United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996) (explaining that "[a] variance occurs when 'the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment' ") (quoting United States v. Castro, 776 F.2d 1118, 1121 (3d Cir. 1985)); United States v. Crocker, 568 F.2d 1049, 1059 (3d Cir. 1977) (discussing variance concept).

Vazquez's arguments are unavailing. The discrepancy between the amount of cocaine stated in the indictment -- more than 5 kilograms -- and the amount of powder cocaine upon which we uphold Vazquez's sentence-- 992 grams -- is, for purposes of the substantial rights inquiry, immaterial. It is immaterial because the indictment charged the 5-kilogram amount, and it is well settled that courts "may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." Rutledge v. United States, 517 U.S. 292, 306, 134 L. Ed. 2d 419, 116 S. Ct. 1241 (1996); accord Fed. R. Crim. P. 31(c) ; see also Schmuck v.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

United States, 489 U.S. 705, 716, 103 L. Ed. 2d 734, 109 S. Ct. 1443 (1989) (adopting "elements approach" to resolving greater/lesser offense issues); cf. United States v. Frorup, 27 V.I. 375, 963 F.2d 41, 42 (3d Cir. 1992) ("This court will uphold a jury verdict convicting a defendant of a lesser offense than the one charged if 'the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit of the greater.'") (quoting Keeble v. United States, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 93 S. Ct. 1993 (1973)). Additionally, had the court submitted drug quantity to the jury to avoid an Apprendi issue, and had **Vazquez** argued to the jury that the evidence did not support a finding that the conspiracy's object concerned more than 5 kilograms of powder cocaine, the Government would have been entitled to a lesser included offense instruction. See Frorup, 963 F.2d at 42 ("A jury instruction on [a] lesser included offense is allowable as long as there is some evidence to support the conviction.").

4.

Even if we were to assume that the Apprendi violation affected Vazquez's substantial rights, he cannot establish the final plain error factor, namely, that the violation seriously affected the fairness, integrity, or public reputation of judicial proceedings. In Johnson, the Supreme Court held that, when the evidence of an element wrongly taken from a jury "overwhelmingly" supports the trial court's finding with regard to that element, "there is no basis for concluding that the error 'seriously affected the fairness, integrity or public reputation of judicial proceedings,' " and therefore, plain error relief is unavailable. See 520 U.S. at 470.

The evidence at trial showed that **Vazquez** was the leader of a drug trafficking operation that distributed powder and crack cocaine in Lancaster County, Pennsylvania. Here, the Government presented overwhelming evidence that **Vazquez** {271 F.3d 106} conspired with others to possess and distribute a quantity of drugs sufficient to justify his sentence. As we previously noted, law enforcement officers seized about 992 grams of powder cocaine and 859 grams of crack cocaine from a rooming house. **Vazquez** had given the drugs to a co-conspirator, Francisco Algarin, for storage. The key to the rooming house's front door was found on Vazquez's person. In addition, investigators found Vazquez's fingerprint on one of the bags in which the cocaine was stored. After the seizure, police interviewed three of Vazquez's drug customers. All three described **Vazquez** as the leader of a drug dealing operation. The trial testimony directly tied **Vazquez** to a drug conspiracy with the co-conspirator, Algarin. On the basis of this evidence, including the undisputed evidence of drug quantity, a rational jury would certainly have found that **Vazquez** had conspired to possess or distribute no less than 992 grams of powder cocaine, almost twice the amount necessary to support his slightly more than 24-year sentence pursuant to § 841(b)(1)(B)'s 5- to-40-year sentencing range.

Under these circumstances, the evidence concerning drug quantity was "overwhelming," and, as we explained in the preceding section, because Vazquez's sentence would not have changed absent the trial error, there is no reasonable basis upon which to conclude that the fairness, integrity, or public reputation of the judicial proceedings were seriously affected. Our holding is in accord with decisions from the First,13 Fifth,14 Seventh,15 Tenth,16 and Eleventh17 Circuits, in which panels considered the evidence adduced at trial and, under the fourth plain error factor, denied relief for Apprendi violations where the evidence was conclusive. Our holding is also in accord with a recent en banc decision of the Fourth Circuit.18 We therefore conclude that, in light of the undisputed evidence of drug quantity attributable to **Vazquez** and our determination that his sentence did not exceed the statutory maximum for the cocaine amount introduced at trial, the fairness, integrity, or public reputation of judicial proceedings were not seriously affected even though an Apprendi violation occurred in his case.19

{271 F.3d 107} III.

**Vazquez** also challenges the supervised release term that the District Court imposed. He contends that the court incorrectly applied the 5-year minimum term of supervised release under § 841(b)(1)(A),

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

when the minimum term was actually 3 years under § 841(b)(1)(C). We note, however, that **Vazquez** did not raise this argument before the District Court and he did not brief and argue this issue before the panel that initially considered his appeal. Under these circumstances, we conclude that **Vazquez** has waived his right to pursue this issue here. See Atwater v. City of Lago Vista, 195 F.3d 242, 245 n.3 (5th Cir. 1999) (en banc), aff 'd 121 S. Ct. 1536 (2001); Travitz v. Northeast Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal."). But even if **Vazquez** had not waived the issue, there was no plain error because the 5-year supervised release term was clearly within the range that the court was authorized to impose under any of § 841(b)'s penalty provisions.

IV.

We have reviewed the additional points on appeal, which we identify in the margin and none of which require extended discussion. We find them all to be without merit. 20

V.

Accordingly, for the reasons that we have set forth above, we will affirm Vazquez's conviction and sentence.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.